McDONNELL et al., Respondents, *v.* HUFFINE et al., Defendants; BAXTER, Appellant.

(No. 3,054.)

(Submitted December 16, 1911.   Decided January 11, 1912.)

[120 Pac. 792.]

*Quieting Title—Water and Ditch Rights—Parol Conveyances—*
*· Easements—License—Abandonment — Prescriptive  Rights —*
*Documentary Evidence—Exclusion—Harmless Error—Memorandum of Costs—Time for Service.*

Ditch Rights—Parol Conveyances—Easement—Prescription.
    1.   A parol conveyance of an easement to run a ditch over the grantor's land, though ineffectual to pass title to the easement because of the statute of frauds, will, if followed by user for the required period, establish a prescriptive title to it.

. Same—Easement—License—Intent of Grantor—Evidence.
    2.   Evidence *held* to show that it was the intention of the grantor to convey an easement giving the grantee the right to run a ditch over his land, and not simply to create a revocable license.

Same—Easement—License—Evidence.
    3.   The intent which animated one when he granted a right to run a ditch over his land is an important consideration in determining whether the right so granted amounted to a revocable license or an easement.

Same—Water Rights—Nature of.

4. The ownership of a ditch right and that of a water right are matters separate and distinct. One may own a ditch without being possessed of a water right, and *vice versa;* hence where one claims a ditch right by prescription he may not be deprived thereof merely because he never owned a water right but had to depend for the use of the ditch upon leased water.

Same—Abandonment.

5. A ditch right and a right to use water being matters separate and distinct, the abandonment of one does not necessarily imply the abandonment of the other.

Same—Right by Prescription—Verbal Objections Insufficient.

6. Mere verbal objections to the use of ditches over one's land are insufficient to stop the ripening of a claim of easement by prescription; to defeat such a claim the adverse possession must have been disturbed or the continuity thereof broken during the statutory period.

Same—Easements—Appurtenances—Prescription—Deeds.

7. Where at the time land is conveyed a ditch right over it had been acquired by prescription, the fact that the deed did not specifically mention such right cannot deprive the claimant of it; if appurtenant to the land, the easement was conveyed by the deed even though not mentioned therein.

Quieting Title—Equitable Title Sufficient to Maintain Action.

8. Possession of real property under an equitable title is sufficient to enable a party to maintain an action to quiet title as against a third party.

Ditch Rights—Easements—Prescription—Documentary Evidence.

9. Where a ditch right by adverse user was initiated on the day a conveyance of the land was made and had ripened into a claim of easement by prescription before suit to quiet title was commenced, any limitations placed upon the use of water and ditches appurtenant to the land by a contract between the grantor and a canal company, if any were made or intended, were immaterial; hence the introduction of the deed in evidence without the contract (both documents constituting but one instrument) *held* not error.

Same.

10. Where a ditch right acquired by prescription was initiated in the year 1892, the question of the extent of the use of the ditch made prior thereto was immaterial.

Same—Easement—Extent of Use—Change—Estoppel.

11. While an easement by prescription must be confined to the exact use originally made of it, the owner of the servient estate is estopped to complain of a more extended one where for eighteen years after the beginning of the enlarged use he failed to object to it.

Memorandum of Costs—Time for Service—Statutes.

12. *Held,* under section 7170, Revised Codes, prescribing that the memorandum of costs must be filed and served within five days after the verdict or notice of the decision of the court, that the five days must be computed from the date upon which the court's written findings and conclusions of law in an action to quiet title were filed, and not from the day on which it announced its decision orally.

Equity—Insufficiency of Evidence—Review.

13. In equity cases, appellant who claims that the court's findings are not supported by the evidence has the burden of showing that the evidence preponderates against them.

*Appeal from District Court, Gallatin County; W. R. C. Stewart, Judge.*

Action to quiet title and for an injunction by John E. McDonnell and another, against John D. Huffine and others. From a decree in favor of plaintiffs, and from an order denying him a new trial, defendant Robert A. Baxter appeals. Affirmed.

*Mr. John A. Luce* submitted a brief in behalf of Appellant, and argued the cause orally.

"An easement is an interest in lands, and the instrument conveying an easement must conform to the requirements of the statutes of frauds and be executed with the formalities essential to conveyance of estates in land." (10 Am. & Eng. Ency. of Law, 2d ed., 409, 410, and cases cited.)  "An easement is an incorporeal hereditament and can pass only by deed." (*Id.;* see, also, *Great Falls Waterworks Co.* v. *Great Northern Ry. Co.,* 21 Mont. 487, 54 Pac. 963.)  The use of a ditch by license or permission is in no sense an easement.  It is the universal rule that the exercise of a right under license or by permission will not ripen into an easement, as there can be no adverse possession in such a case.  (*Crawford* v. *Minnesota & Mont. Land & Imp. Co.,* 15 Mont. 153, 38 Pac. 713; 1 Cyc. 1030, and cases cited; *Dexter* v. *Tree,* 117 Ill. 532, 6 N. E. 506, and cases cited; *Cargar* v. *Fee,* 140 Ind. 572, 39 N. E. 93; *Johnson* v. *Knapp,* 150 Mass. 267, 23 N. E. 40; *Wiseman* v. *Lucksinger,* 84 N. Y. 31, 38 Am. Rep. 479; *Elster* v. *City of Springfield,* 49 Ohio St. 82, 30 N. E. 274; *Pentland* v. *Keep,* 41 Wis. 490; *Thoemke* v. *Fiedler,* 91 Wis. 386, 64 N. W. 1030.)  An easement by prescription presupposes a grant, and is to be confined to the exact use originally made and cannot be extended.  (10 Am. & Eng. Ency. of Law, 2d ed., 430; *Jennison* v. *Walker,* 11 Gray (Mass.), 423; *Atwater* v. *Bodfish,* 11 Gray (Mass.), 150; *Holsman* v. *Boiling Spring etc. Co.,* 14 N. J. Eq. 346.)  "The extent of a servitude is determined by the terms of the grant, or by the nature of the enjoyment by which it was acquired." (Rev. Codes, sec. 4512.)

Taking the extreme evidence as to the nature of the use in this case as if it were a grant which had been made to the predecessors in interest of the plaintiffs, it would have been a grant of the right to flow not to exceed 100 inches of the waters of Middle creek, each, across the lands of the defendant Baxter. We contend that the evidence shows that this use did not at any time exceed sixty inches. Furthermore, the right from Middle creek which we are supposing had been granted was only a high-water right which at some times could be used and at other times not. This would be the limitation upon the rights of the plaintiffs, even though a grant had been made. In no way would the plaintiffs have the right to change the use. (*Winslow* v. *Vallejo,* 148 Cal. 723, 113 Am. St. Rep. 349, 84 Pac. 191, 5 L. R. A., n. s., 851, 7 Ann. Cas. 851.) In *Allen* v. *San Jose Land & Water Co.,* 92 Cal. 138, 28 Pac. 215, 15 L. R. A. 93, it was held that where the defendant was the owner of an easement and ran water in an open ditch over the plaintiff's land, he could not change the easement by running the water in a pipe in the ditch because the same tended to substitute a new and different servitude. (*Koenigs* v. *Jung,* 73 Wis. 178, 40 N. W. 801; *McMillian* v. *Lauer,* 24 N. Y. Supp. 951; *Simpson* v. *Coe,* 4 N. H. 301.) It has been repeatedly held that private ways over a piece of land to one piece cannot be extended or used to reach other lands. (*Greene* v. *Canny,* 137 Mass. 64; *Albert* v. *Thomas,* 73 Md. 181, 20 Atl. 912; *Stearns* v. *Mullen,* 4 Gray (Mass.), 151; *Smith* v. *Porter,* 10 Gray (Mass.), 66; *French* v. *Marstin,* 32 N. H. 316.) A grant of a right to build a ditch to a mill on one piece of land conveys no right to build a ditch to or on other land. (*Dickerson* v. *Mickter,* 54 Mass. 217.) A right to convey a certain amount of water, where the water is taken through a flume, is measured by the capacity of the flume. (*Gilford Hosiery Co.* v. *Pittman Mfg. Co.,* 63 N. H. 500, 3 Atl. 641.) There was no right in the plaintiffs, therefore, to enlarge or change the use. (See *Onthank* v. *Lake Shore & M. S. R. Co:,* 71 N. Y. 194, 27 Am. Rep. 35.) The rights of the predecessors of plaintiffs being confined to the Middle creek right, when this right was aban-

doned all rights in the ditch to flow the Middle creek water through the same became abandoned also and became extin-. guished thereby. (Rev. Codes, sec. 4517; 10 Am. & Eng. Ency. of Law, 2d ed., 438, and cases cited.)

"A deed will not convey an easement by the use of the word 'appurtenances' unless it has ripened by prescription." (10 Am. & Eng. Ency. of Law, 2d ed., 419, and cases cited; *Spaulding* v. *Abbott,* 55 N. H. 423; *Swazey* v. *Brooks,* 34 Vt. 451.) No easement being described or mentioned in Wilson's deed to Wylie, and it never having become appurtenant, his use cannot be tacked to Wylie's so as to complete the prescriptive period. (*Mazyck* v. *Wight,* 2 Brev. (S. C.) 151; *King* v. *Smith,* Rice (S. C.), 11; *Pegues* v. *Warley,* 14 S. C. 180.) There was no "color of title" because Wilson's deed did not describe the ditch. (1 Cyc. 1090, and citations.)

The failure to make findings upon material issues is reversible error. (*Estill* v. *Irvine,* 10 Mont. 509, 26 Pac. 1005; *Quinlan* v. *Calvert,* 31 Mont. 115, 77 Pac. 428; *Christy* v. *Spring Valley W. W.,* 84 Cal. 541, 24 Pac. 307; *McTarnahan* v. *Pike,* 91 Cal. 540, 27 Pac. 784; *Ball* v. *Kehl,* 95 Cal. 606, 30 Pac. 780; *Duane* v. *Neumann* (Cal.), 2 Pac. 274; *Everett* v. *Jones,* 32 Utah, 489, 91 Pac. 360; *Leviston* v. *Ryan,* 75 Cal. 293, 17 Pac. 239; *Later* v. *Haywood,* 14 Idaho, 45, 93 Pac. 374.) It became and was the duty of the court to supply the omissions in the findings when its attention was called to such omissions. (*Luse* v. *Isthmus T. R. Co.,* 6 Or. 125, 25 Am. Rep. 506; *Simmons* v. *Richardson,* 5 Hun (N. Y.), 177; *Logan* v. *Hale,* 42 Cal. 646; *Ogburn* v. *Connor,* 46 Cal. 353, 13 Am. Rep. 213; *Hayes* v. *Witherbee,* 60 Cal. 396; *Mitchell* v. *Jensen,* 29 Utah, 346, 81 Pac. 165.)

The court erred in overruling defendant Baxter's motion to tax costs. The memorandum of costs was not filed within the time allowed by law. (*Kinsley* v. *New Vulture Min. Co.,* 11 Ariz. 66, 90 Pac. 438, 110 Pac. 1135; *Reins* v. *King,* 27 Mont. 511, 71 Pac. 763; *Dow* v. *Ross,* 90 Cal. 562, 27 Pac. 409; *Mullally* v. *Irish-American Ben. Assn.,* 69 Cal. 559, 11 Pac. 215.)

*Mr. George Y. Patten* submitted a brief in behalf of Respondents, and argued the cause orally.

The continuous use of an easement for the statutory period establishes a title although the easement is held under a parol grant which is void under the statute of frauds. (14 Cyc. 1152; *Talbott* v. *Thorn,* 91 Ky. 417, 16 S. W. 88.) A case in point, and with similar facts, is that of *Lechman* v. *Mills,* 46 Wash. 624, 91 Pac. 11, 13 L. R. A., n. s., 990, 13 Ann. Cas. 923. (See, also, *Coventon* v. *Seufert,* 23 Or. 548, 32 Pac. 508; *Gyra* v. *Windler* 40 Colo. 366, 91 Pac. 36; *Schmidt* v. *Brown,* 226 Ill. 590, 117 Am. St. Rep. 261, 80 N. E. 1071, 11 L. R. A., n. s., 457; *Settle* v. *Cox,* 28 Ky. Law Rep. 510, 89 S. W. 534; *Ashley* v. *Ashley,* 4 Gray (Mass.), 197; *Wells* v. *Parker,* 74 N. H. 193, 66 Atl. 121.) It is the use of an easement during the statutory period that determines the extent of the right. (14 Cyc. 1154 h; *Boynton* v. *Longley,* 19 Nev. 69, 3 Am. St. Rep. 781, 6 Pac. 441.)

Appellant's counsel contends that the use of the ditch by respondents and their respective predecessors has been under a license, and that the exercise of a right under license or by permission will not ripen into an easement, as there can be no adverse possession in such a case. We concede the correctness of this principle of law, but deny the premise. We insist that appellant's theory of a license, or permissive use, is without support in the testimony. It may be noticed, however, although it is not pertinent here, that a permissive use may be changed to an adverse use by an assertion of right brought home to the licensor, and may then ripen into a prescription. (14 Cyc. 1152.)

It is also contended that the change from Middle creek water to Farmers' canal water operated as an abandonment, even if respondents' predecessors had rights or easements. If a change is not in the kind of use, but merely one of degree, imposing no greater burden on the servient estate, the right to use the easement is not affected. (*Baldwin* v. *Boston etc. Ry. Co.,* 181 Mass. 166, 63 N. E. 428.)

Another contention is that a man cannot either initiate or hold a ditch right unless he owns water. One may own a ditch without owning a water right, and *vice versa.* (Long on Irrigation, sec. 74; see, also, *Clifford* v. *Larrieu,* 2 Ariz. 202, 11 Pac. 397; *McLear* v. *Hapgood,* 85 Cal. 555, 24 Pac. 788; *Stocker* v. *Kirtley,* 6 Idaho, 795, 59 Pac. 891.) The right to the use of an irrigating ditch for the benefit of one's land may exist although he can enjoy the same only by procuring a right of way through intervening lands. (*Blankenship* v. *Whaley,* 142 Cal. 566, 76 Pac. 237; *Swank* v. *Sweetwater Irr. & Power Co.,* 15 Idaho, 353, 98 Pac. 297.)

Where an easement is appurtenant to land, it passes without being specifically mentioned. (14 Cyc. 1184.) A transfer of real property passes all easements attached thereto. (Rev. Codes, sec. 4618.)

Sec. 7110, Revised Codes, provides that the cost bill must be served and filed "within five days after the verdict or notice of the decision of the court or referee." This section was taken *verbatim* from section 1033 of the California Code of Civil Procedure. The question here is as to the interpretation of the word "decision" in the clause quoted above. It was construed to mean the findings of fact and conclusions of law, signed by the court, and filed with the clerk as the basis of the judgment entered, in the case of *Porter* v. *Hopkins,* 63 Cal. 55. (See, also, *Mullally* v. *Irish-American B. Soc.,* 69 Cal. 559, 11 Pac. 215.) In 1899 the California statute above was amended by adding thereto the sentence: "By the decision of the court, or referee, herein referred to, is meant the signing and filing of the findings of fact and conclusions of law." In *Carpy* v. *Dowdell,* 129 Cal. 244, 61 Pac. 1126, this amendment was held to be merely declaratory of existing law. The above interpretation was the settled law of California when the statute with that interpretation was adopted by this state. (*Deer Lodge Co.* v. *United States Fidelity & Guaranty Co.,* 42 Mont. 315, 112 Pac. 1060.) The California court has also held that a cost bill filed before the filing of the findings of fact and conclusions of law is

premature, and will be stricken out on motion. (*Sellick* v. *De Carlow,* 95 Cal. 644, 30 Pac. 795.).

*Mr. George D. Pease,* for Respondents, submitted a brief and argued the cause orally.

The real issue in this action is whether or not the respondents McDonnell and Tedrick own a right of way over the lands of appellant Baxter for the operation and maintenance of two irrigating ditches, each to carry and convey 300 inches of water for respondents. These two ditches having been constructed and in operation prior to the time that patent was issued from the United States, a right of way was granted by the United States to the predecessors in interest of the respondents. (U. S. Rev. Stats., sec. 2339.) In the Montana cases of *Atchison* v. *Peterson,* 20 Wall. (U. S.) 507, 22 L. Ed. 414, 1 Morr. Min. Rep. 583, and *Basey* v. *Gallagher,* 20 Wall. (U. S.) 670, 22 L. Ed. 452, 1 Morr. Min. Rep. 683, the supreme court of the United States construed this section of the statute, and in the cases of *Broder* v. *Water Co.,* 101 U. S. 274, 25 L. Ed. 790, 5 Morr. Min. Rep. 33, and *Jennison* v. *Kirk,* 98 U. S. 453, 25 L. Ed. 240, 4 Morr. Min. Rep. 504, that court confirmed the principle enunciated by the above section. And this court in the case of *Cottonwood Ditch Co.* v. *Thom,* 39 Mont. 115, 101 Pac. 825, 104 Pac. 281, in a case involving the right of way for a ditch, sustained this same principle. In that case the ditch was constructed over government lands before the homestead filing was made and this court held that the homesteader took the lands subject to the right of way for plaintiff's ditch. (See, also, *Tynon* v. *Despain,* 22 Colo. 240, 43 Pac. 1039; *Farmers' High Line Canal Reservoir Co.* v. *Moon,* 22 Colo. 560, 45 Pac. 437.) In the case here on appeal Reeves was in the possession of the lands over which the ditches in controversy were constructed prior to the time that either Reeves or Baxter filed upon the same. Consequently, both Reeves and Baxter, when they afterward received patents for said lands, took said lands subject to the right of way for plaintiff's ditches over the same. Reeves, the owner of the land at the time the ditches were

constructed, having consented to the building of the same, Baxter, his successor in interest, is estopped from denying the right of the plaintiffs or collecting damages therefor. (*Northern Pacific Ry. Co.* v. *Murray,* 87 Fed. 648; *Maffet* v. *Quine,* 93 Fed. 347.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

Some time prior to 1871 a ditch was constructed from Middle creek, in Gallatin county, and used for conveying water for irrigation and other useful purposes. The ditch was then known as the Newell ditch, and was used by Bean, Cline, Ferguson, McCormick, Lindley and Jewett, who owned or occupied ranches along the course of the ditch. The ditch headed in Middle creek south of these ranches and the fall of the country is to the north. About 1871 Adam C. Reeves settled on lands immediately north of these ranches, made homestead entry, and also inclosed two government forty-acre tracts adjoining his homestead on the north. Shortly afterward Reeves obtained from McCormick some sort of right to enlarge, extend and use the Newell ditch, and he did extend the main ditch to his homestead, and then, by constructing two prongs or branches, extended it to the two government forties which he had inclosed. After this work was completed, and about 1878, Stephen D. Parsons, Arthur E. Blaine and J. H. Nixon settled on lands to the north and northwest of Reeves, and obtained from Reeves a right of some character to extend the two prongs or branches of the old Newell ditch across the two government forties which Reeves had inclosed, so as to convey water to their ranches. About this time the Newell ditch came to be known as the Parsons-Grove ditch. During those early days all the claimants in the ditch used water from Middle creek, but their use was made uncertain by the claim of prior appropriators. About 1892 the Farmers' canal was constructed which conveyed water from the West Gallatin river in a northeasterly direction over Middle creek and across the old Newell ditch. Thereafter the users of

the Newell or Parsons-Grove ditch obtained water rights from the canal and gradually gave up their claims to water from Middle creek; and by 1895 or 1896 the Middle creek claims were entirely abandoned and thereafter canal water was used exclusively. The McDonnell rights to canal water were acquired about 1898, and the Tedrick right was acquired about 1907. Parsons conveyed his ranch to Wilson, Wilson conveyed to W. W. Wylie, and Wylie conveyed to the plaintiff McDonnell. Blaine conveyed his ranch to the plaintiff Tedrick. The Nixon property is not involved in this controversy. About 1879 Reeves made timber culture entry on the east forty of government land which he had inclosed, received patent, and in 1893 transferred it to the defendant Baxter. In 1897 Baxter made desert entry on the west forty of government land which Reeves had inclosed, and later received patent for it. These plaintiffs, claiming ditch rights or easements over the two forty-acre tracts just mentioned, brought this suit to quiet their title, and for an injunction. A preliminary injunction was issued and upon final hearing was made permanent. Defendant Baxter has appealed from a final decree in favor of plaintiffs, and from an order of the district court denying him a new trial.

The plaintiffs claim rights by prescription to use the two prongs or branches which constitute an extension of the Newell or Parsons-Grove ditch to convey to their ranches 300 inches of water—150 inches for each—for irrigation and other useful purposes; and in their complaint they allege that for more than thirty years they and their predecessors in interest have been in the open, notorious, continuous, uninterrupted and adverse occupation, use and enjoyment of these ditches through the lands of the defendant Baxter under claims of right. Stripped of other allegations not material upon this appeal, the foregoing briefly presents the plaintiffs' claims which are disputed by the defendant Baxter in his answer. One of the principal contentions made by counsel for appellant Baxter arises over the question: What character of right did Parsons and Blaine, the predecessors of these plaintiffs, acquire from Reeves in 1878, when

they extended the two prongs or branches of the ditch across the two forty-acre tracts, then in possession of Reeves, for the purpose of conveying water upon their ranches?

The trial court found that Reeves intended to convey by oral grant an easement or ditch right over each of the two forties. Appellant contends that the transaction between Reeves on the ·one part, and Parsons and Blaine on the other, amounted to nothing more than a revocable license. If the trial court's finding is justified by the evidence, then it. follows that although the [1]   verbal grant was ineffectual to pass title to the easements because of the statute of frauds, it did furnish a sufficient foundation upon which to lay a claim of adverse user.   In the note to *Lechman* v. *Mills* (46 Wash. 624, 91 Pac. 11), as reported in 13 L. R. A., n. s., 990, the author says: "The authorities appear to be unanimous in supporting the rule that the parol conveyance of an easement, though void under the statute of frauds, will, if followed by user for the period of prescription, establish a prescriptive title to the easement.   At least no decision can be found which in any manner questions this proposition."   Leading cases supporting the rule just announced are: *Lechman* v. *Mills,* above; *Coventon* v. *Seufert,* 23 Or. 548, 32 Pac. 508; *Gyra* v. *Windler,* 40 Colo. 366, 91 Pac. 36; *Sumner* v. *Stevens,* 6 Met. (Mass.) 337; *Jewett* v. *Hussey,* 70 Me. 433; *Schmidt* v. *Brown,* 226 Ill. 590, 117 Am. St. Rep. 261, 80 N. E. 1071, 11 L. R. A., n..s., 457; *Wells* v. *Parker,* 74 N. H. 193, 66 Atl. 121; *Talbott* v. *Thorn,* 91 Ky. 417, 16 S. W. 88.   To the same effect are Gould on Waters, sec. 338; Washburn on Easements, 3d ed., p. 135; and 14 Cyc. 1152.

Reeves testified upon the trial of this case, in effect, that he gave to Parsons, Blaine and Nixon permission to use the two ditches and extend them so as to convey water upon the Parsons, Blaine and Nixon ranches.   He further testified: "As near as I can remember, Parsons, Blaine, Nixon and myself claimed equal rights in the ditch, and worked so as to accommodate each other as far as possible.   *   *   *   I remember that Parsons, Nixon and Blaine were always considered members of the Newell or Parsons-Grove Ditch Company.   *   *   *   There is no doubt in

my mind that Mr. Tedrick and Mr. McDonnell have just as good a right in those ditches as Huffine and I ever had.''

Plaintiffs also offered in evidence a water right declaration, executed and recorded by Reeves, Blaine, Parsons, Nixon, Huffine and six others, each claiming 100 inches of water from Middle creek through the ''old Newell ditch.'' While the evidence of [2] Reeves is not very satisfactory, being largely in the nature of his conclusions, the evidence, taken as a whole, seems sufficient to convince anyone that it was the intention of Reeves to convey an easement, and not to create a mere revocable license,—and after all, the intent which animated Reeves when he accorded to [3] Parsons, Blaine and Nixon the right to extend and use the ditches is the matter of prime consideration here. (*Wells* v. *Parker,* above.) But if it be said that Reeves was not in a position to make such grant by reason of the fact that the land belonged to the government, then Parsons and Blaine acquired the right by virtue of section 2339 of the Revised Statutes of the United States; for it cannot be possible that land can be so held that there is not anyone who can grant an easement over it. Either the government did grant the right or Reeves was in a position to make the grant.

Some contention is made that the use of these ditches could not have been adverse, because Wilson, a predecessor of plaintiff McDonnell and plaintiff Tedrick, during certain seasons leased water from defendant Baxter and conveyed it through these ditches after Baxter became the owner of the two forty-acre tracts above mentioned. This contention is apparently based upon the assumption that the lessee of water must be also a lessee of the ditch which conveys it, or, in other words, that a water ditch cannot be appurtenant to land unless the land owner also has a valid water right. That this assumption is entirely [4] erroneous is clear. One may own a ditch right without owning a water right, or a water right without a ditch right. The authorities are uniform in so holding. In Long on Irrigation, section 74, it is said: ''It is to be noted that an irrigation ditch as property is entirely distinct from the right to conduct water

through it.   The ownership of the ditch and that of the water right may be, and often is, vested in the same person, but one may own a ditch without owning a water right and *vice versa.*"

In 1 Wiel on Water Rights in the Western States, section 280, the author says: "The water right is entirely distinct from the right to the ditch, canal or other structure in which the water is conveyed.   The latter is an easement over land.   The former is an incorporeal hereditament *sui generis,* in the flow and use of the stream as a natural resource, and not an easement.   The water right and ditch right may be conveyed separately, or the one may exist without the other.   An abandonment of one does not necessarily include abandonment of the other.   One may, however, be appurtenant to the other."   And in sections 455 and 456, where the same subject is treated more in detail, many examples are given to illustrate the doctrine, and numerous cases are cited which fully support the text.

The fact, then, that Wilson and Tedrick rented water for irrigation from defendant Baxter, while it made them Baxter's tenants as to the water right, did not reflect at all upon the question of ownership of the ditches through which the water was conveyed.   And if these ditches were actually used for the prescribed period, and the use was characterized by all the attendant circumstances which constituted it adverse, open, exclusive, and under claim of right, title by prescription resulted even though the claimants to the easements never owned water rights but had to depend for their use of the ditches upon water leased or otherwise acquired from year to year.

With the disposition of this contention many other assignments made by counsel for appellant fall of their own weight; among others, that the abandonment of the Middle creek water [5]   rights by plaintiffs' predecessors operated as an abandonment of their claims to ditch rights over defendant Baxter's land. As we have said above, so far distinct are the water rights and ditch rights that the abandonment of one does not necessarily ·imply an abandonment of the other.   (Wiel on Water Rights in the Western States, sec. 456; see, also, *Nichols* v. *McIntosh,* 19 Colo. 22, 34 Pac. 278.)

The record discloses that about the time McDonnell purchased from Wylie, defendant Baxter notified him that Wylie did not have any ditch right over the Baxter land; and the fact further appears that Baxter was objecting to the use of these ditches by plaintiffs and the successors of Nixon. If, however, Wylie and his grantors and predecessors in interest had already acquired by prescription easements over the Baxter lands, Baxter's denial [6] of the rights would not affect them; and neither would his verbal objections to the use of the ditches over his land affect the character of the use as uninterrupted and exclusive. Something more than mere verbal objection is necessary to stop the ripening of the claim. (*Lockey* v. *City of Bozeman,* 42 Mont. 387, 113 Pac. 286; Long on Irrigation, sec. 91; Wiel on Water Rights, sec. 584; *Oregon Construction Co.* v. *Allen Ditch Co.,* 41 Or. 209, 93 Am. St. Rep. 701, 69 Pac. 455.) In order to defeat the claim of title by prescription, the adverse possession by the claimant must have been disturbed or the continuity of such possession broken during the statutory period. (*Cox* v. *Clough,* 70 Cal. 345, 11 Pac. 732.)

Objection was made to the introduction in evidence of the deed from Blaine to Tedrick. The deed conveyed the land with the appurtenances, but does not mention specially this claimed ditch right. However, if at the time the deed was executed and [7] delivered, Blaine had acquired this ditch right by prescription, the deed conveyed the easement if it was appurtenant to the Blaine ranch, and whether it was or not was one of the questions for the trial court's determination. There was not any error in the ruling.

Objection was also made to the admission of evidence touching plaintiff McDonnell's ownership of the property claimed by him. It appears that in 1906 McDonnell entered into a contract with W. W. Wylie to purchase the lands now claimed by McDonnell; that a part of the purchase price was paid and notes given for the balance, and that final payment is not due until January 1, 1915. The transaction was evidenced by a contract in writing. On the same day Wylie and his wife executed a warranty deed to McDonnell, and this deed was placed in escrow, its delivery to

await the fulfillment of the terms of the contract by McDonnell. The contract refers to the lands now claimed by McDonnell, but does not mention the appurtenances or this claimed ditch right; and it is insisted by counsel for appellant that this contract alone measures the rights, if any, which McDonnell may now assert. With this we do not agree.   The record discloses that the contract and deed in escrow evidenced but a single transaction, that they were executed contemporaneously, and in fact constituted but one instrument.   It was therefore proper to introduce the deed with the contract, to disclose the extent of McDonnell's interest; and since the deed conveys the land with the water ditches appurtenant thereto, the evidence was properly admitted. Assuming that McDonnell has only an equitable title to the property in controversy, yet this, coupled with his possession, is [8] sufficient to enable him to maintain an action to quiet title as against a third party.   (*Van Vranken* v. *Granite County,* 35 Mont. 427, 90 Pac. 164; 32 Cyc. 1329.)·

In tracing his title from Parsons, the original patentee, plaintiff McDonnell offered in evidence a deed from Parsons to Wilson.   This deed purported to convey the land now claimed by McDonnell, together with the appurtenances, water rights and water ditches belonging to the same, ''subject to a certain contract with the Gallatin Canal Company.''   The contract to [9] which reference was thus made was not introduced in evidence and its contents are not made known.   Counsel for appellant insists that the deed and contract constituted but one instrument, and with this we agree.   But he insists further that it was reversible error for the trial court to receive the deed in evidence without the contract, since it is manifest that the contract is necessary in order to explain the deed.   Whether the party offering a document must offer the whole of it in order to get a part into the record has been a fruitful subject of contention among courts and text-writers.   After a learned discussion of the subject, Dean Wigmore says: ''It has been seen in the foregoing sections that there is much opportunity for difference of opinion whether the proponent in the first instance must put in the whole.''   (3 Wigmore on Evidence, sec. 2113.)   There is not

any question but that defendant Baxter could have offered the contract referred to in the deed, if he had it in his possession (Rev. Codes, sec. 7871; *McConnell* v. *Combination M. Co.,* 30 Mont. 239, 104 Am. St. Rep. 703, 76 Pac. 194) ; or he could have demanded its production by plaintiff McDonnell. The record fails to disclose that any demand was made. But whatever may [10] be said of the general rule, it is apparent at once that there could not have been any prejudice to defendant Baxter in the admission of the deed without the contract. The deed from Parsons to Wilson bears date April 6, 1892. This action was not commenced until 1910. The trial court found: "20. That for more than ten years prior to the commencement of this action the plaintiffs and their respective predecessors in interest have been in the open, actual, visible, notorious, continuous and uninterrupted occupation, use and enjoyment of the said Parsons-Grove ditch through the lands of the defendants, above described, as tenants in common with each other and with others who have had rights to flow water through the same, under a claim of right and title as against all the world, and exclusive of any other right; and during said period the plaintiffs, respectively, and their respective predecessors in interest, have each flowed through said ditch, across the lands of the defendants, during each irrigating season when they had crops on their respective farms which required irrigation, water to the amount of 150 inches, miners' measurement, to the use of which they were respectively entitled by ownership or lease, to and upon their respective farms for the irrigation thereof." If this finding is supported by the evidence—and we think it is—the contents of the contract referred to in the Parsons deed become immaterial, for the ditch right now claimed by McDonnell accrued to him by prescription after the Parsons deed was delivered, and no matter what limitations that contract may have imposed, if the use of these ditches by McDonnell and his predecessors Wylie and Wilson, was continuous, uninterrupted, notorious, exclusive and adverse under claim of right from April 6, 1892—as the court finds it was—the claim thus asserted ripened into title by prescription after the Parsons deed was delivered and before this

action was commenced. The record negatives the idea that the Gallatin Canal Company was a predecessor of defendant Baxter.

Complaint is made of the finding of the trial court as to the extent of the use of these ditches prior to 1892. To our minds this is immaterial; for if plaintiffs could prove rights in the ditches at all, they could rely upon the use made by them and their predecessors between 1892 and the commencement of this action, and might have ignored the conditions prevailing prior to 1892, except so far as it was necessary to show that the use did not originate in a mere revocable license.

We agree with counsel for appellant in his statement of the general rule that an easement by prescription is to be confined [11] to the exact use originally made of it. But we do not agree with him in his assertion that such use cannot be changed. True, it cannot be changed without giving to the owner of the servient estate a cause for complaint; but if we assume, as the court found, that the right of each of these plaintiffs prior to 1892 was limited to the use of these ditches to flow only 100 inches of water from Middle creek, but that since 1892 the right has been asserted to flow 150 inches of water from the West Gallatin river, it only demonstrates that following 1892 the defendant Baxter had a cause of action against each of these plaintiffs which he failed to assert; and this failure on his part during the eighteen years succeeding 1892 furnishes the best evidence of the adverse character of plaintiffs' use of the ditches during that time.

Error is predicated upon the order of the court overruling defendant Baxter's motion to tax costs. On November 12 the trial court announced orally its determination upon this case. On November 15 findings of fact and conclusions of law in writing were made and filed. On November 21 plaintiffs served their memorandum of costs. It is now insisted that the memorandum was not filed within five days as required by section 7170, Revised Codes; and the question arises: Shall the five days be computed from the date upon which the court orally announced its decision, or from the date upon which the written findings and conclusions were filed?

Section 7170 above provides that the memorandum must be
[12] filed within five days after the verdict or notice of the de-
cision of the court.    Our Code section above was taken from Cali-
fornia (Cal. Code Civ. Proc., sec. 1033).    In *Porter* v. *Hopkins,*
63 Cal. 53, decided in 1883, the California court held that "the
decision referred to is the findings of facts and conclusions of
law, signed by the court and filed with the clerk."    In *Sellick*
v. *De Carlow,* 95 Cal. 644, 30 Pac. 795, the same court held that
a memorandum of costs presented before the findings *were filed*
was premature and should have been stricken out.    We think
that the construction placed upon the statute by the California
court is the correct one; and having adopted the statute after it
was construed by the highest court of the state from which we
borrowed our statute, it will be presumed that in enacting sec-
tion 7170 above, our legislature intended that the same rule of
construction should prevail in this jurisdiction as in California.
November 20, 1910, was Sunday and a holiday (Rev. Codes, sec.
6217) ; and under the rule provided by our Code for the com-
putation of time (Rev. Codes, secs. 6219, 8067), these plaintiffs
had all of the 21st of November upon which to serve and present
their memorandum of costs.

There is a sharp conflict in the evidence as to the extent and
character of the use made of these ditches over the Baxter land by
the plaintiffs and their predecessors in interest.    But under the
rule adopted in this state, appellant has the burden of showing
[13] that the evidence preponderates against the trial court's
findings, and we do not think that the appellant or his counsel
can insist that upon this record we ought to say that the prepon-
derance of the evidence is in favor of the defendant Baxter's
claim.    In any event, we cannot do so, particularly in view of
the more advantageous position occupied by the trial court in
observing the witnesses while upon the stand.    The findings made
by the trial court appear to us to cover every material issue pre-
sented.

While we have carefully reviewed all assignments made by
counsel for appellant, we have confined our remarks to such
questions only as appear to us of most importance.

We do not find any reversible error in the record.   The judgment and order are affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Mr. Justice Smith concur.

