Plaintiff brought this action for the purpose of obtaining an accounting of a partnership alleged to have existed between himself and the defendant, and to secure a division of the partnership assets according to the relative interests of the parties.
Under his complaint, the sufficiency of which was not questioned, the plaintiff introduced evidence at the trial tending to prove that from about November, 1919, to November, 1920, he had been running a band of defendant's sheep on shares; that about the last of October, 1920, the defendant proposed to him that they sell all this band of sheep, except the ewe lambs, buy more ewe lambs, and that the band of sheep thus provided should be owned by the parties in equal shares; that the plaintiff should run the sheep; that the defendant should furnish one herder to offset plaintiff's services; that the sheep should be summered on plaintiff's place and wintered on the defendant's place; that they should "run them until they are yearlings, and if we take a notion we will sell them again and buy lambs again"; and that the business should be carried on in the name of the defendant, which proposal was accepted and agreed to by plaintiff; and that pursuant *Page 378 
to this agreement the plaintiff contributed to the business about 200 yearling sheep and a half interest in about 900 lambs which were with the band of the defendant that he had been theretofore running on shares; that a part of these sheep, together with some sheep belonging to the defendant, were sold and the proceeds used to buy more ewe lambs, which were placed in the band claimed by plaintiff to constitute the partnership property; and that it was arranged that either the plaintiff or the defendant should have the right to buy more sheep for the business. The testimony on the part of the plaintiff tended further to show that all the proceeds derived from the sale of the sheep, wool, and increase from this band were deposited in bank in the name of the defendant, and that the plaintiff had authority to, and did, draw checks against this fund to pay the running expenses of the business; that the plaintiff took entire charge of the sheep about November, 1920, and retained such charge and conducted the business in accordance with the agreement down to the sixth day of January, 1923, on which last-mentioned date the defendant dispossessed him and put another man in charge, and had refused, after demand, to account to the plaintiff for any part of the partnership property or any of the proceeds thereof.
In his answer the defendant denied all the allegations of the complaint and as an affirmative defense set up that in the fall of 1920 the plaintiff was indebted to him in the sum of more than $1,800, and in order to pay the same agreed to work for him as camp tender at an agreed salary of $60 per month, and did so work from November, 1920, to January 6, 1923, a period of twenty-six months, during which time he became indebted to the defendant in the further sum of $487.47; that after crediting plaintiff with the amount earned, there still remained due to the defendant the sum of $727.47, for which amount judgment was demanded against the plaintiff. *Page 379 
At the trial the defendant in his testimony contradicted all of the statements of the plaintiff and the other witnesses introduced in his behalf, tending to establish a partnership relation, and also introduced testimony tending to sustain the allegations of his answer.
The issues of fact thus presented were submitted to a jury which, in response to special interrogatories, found in favor of the plaintiff on the allegations of partnership. The court adopted the findings of the jury, made other findings of its own, and entered judgment appointing a referee to make an accounting of all of the business transactions of the partnership, and provided for a division of the assets of the partnership upon the coming in of the report of the referee. From this judgment the defendant has appealed.
1. Defendant's principal contention is that the evidence was[1] not sufficient to justify the findings and decree of the court. With this contention we cannot agree. If the evidence introduced on behalf of the plaintiff was accepted as true, it showed that the parties by mutual consent associated themselves "for the purpose of carrying on business together and dividing its profits between them," and, consequently, "a corresponding division of its losses"; that each of the parties was empowered to purchase property for the business and incur liabilities in connection therewith. In the absence of an agreement to the contrary, it would follow as matter of law that either of the parties could dispose of the partnership property in the ordinary manner (sec. 7997, Rev. Codes 1921), within the limitations imposed by section 7998. This testimony was sufficient to justify the court's finding that a partnership existed between plaintiff and defendant. (Secs. 7981, 7982, Rev. Codes 1921; Sanborn Co.
v. Powers, 58 Mont. 214, 190 P. 990.)
It is the established rule in this jurisdiction that on an[2] appeal in an equity case the findings of the trial court will not be disturbed unless there is a decided preponderance of the evidence against them. The evidence in this case was *Page 380 
in the first instance submitted to a jury, which resolved the disputed questions in favor of the plaintiff, and the trial court, having had the superior advantage of hearing the testimony and observing the witnesses on the stand, adopted the findings of the jury. Although the testimony is in conflict upon each material point involved, we cannot say from the record that it decidedly preponderates against the court's findings, and therefore they will not be disturbed.
2. In section 7519, Revised Codes of 1921, it is provided that[3] "an agreement that by its terms is not to be performed within a year from the making thereof" (subdivision 1), is invalid, "unless the same or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or his agent." The defendant urges that since the partnership agreement claimed by the plaintiff was entirely oral, and under it the parties might have continued to operate for more than one year, the same was invalid under the above section.
In the plaintiff's testimony above referred to he stated that the agreement between himself and the defendant was entered into the last of October or the 1st of November, 1920, and was that they would run the lambs which were to make up the partnership band "until they are yearlings, and if we take a notion we will sell them again and buy lambs again." Upon his cross-examination plaintiff stated that there was no agreement as to how long the partnership should continue, and in another portion thereof the following questions were asked and answers given:
"Q. This arrangement or whatever it was you had with Charley Miles that you claim was made in the middle of October, 1920, wasn't to last more than one year, was it? A. Certainly it was; yes.
"Q. What makes you think that? A. Because he said we would sell the yearlings again if we wanted to and buy lambs again and run if we wanted to and hold the bunch we had and keep running them, half of them mine and half his. *Page 381 
"Q. According to your understanding, there was no agreement that this partnership would work out inside of a year? A. No, sir."
This was all the testimony bearing upon the question of the time of performance. From this it appears that whether the agreement should continue in effect after the lambs which went into the partnership band in October or November, 1920, became yearlings, which would be in the spring of 1921, was wholly optional with the parties. Under the terms of the agreement it might have been fully executed within one year, and therefore it did not come within the inhibition of the statute quoted.
Subdivision 1 of section 2185, Civil Code of 1895, was the same as subdivision 1 of section 7519, supra, and referring to this section in the case of Ayotte v. Nadeau, 32 Mont. 498,81 P. 145, this court said: "Subdivision 1, supra, is applicable to those contracts only which by their terms are not to be performed within one year by either of the parties. Therefore, where a contract may be performed by one of the parties within one year, the statute does not apply, especially so where the performance has been fully carried out."
Referring to a similar provision of the California Code, it is said in Hellings v. Wright, 29 Cal.App. 649, 156 P. 365: "The statute does not declare void a contract which may not be performed within a year, or which is not likely to be performed within that period. It includes only agreements which, fairly and reasonably interpreted, do not admit of a valid execution within the year" (citing cases).
Since the contract in question did not by its terms indicate that it should not be performed within one year from the time it was made, but on the contrary was capable of valid performance within that period of time, it did not fall within the provisions of the statute quoted.
3. The defendant also assigns as error an order of the court[4] refusing to strike from the files the plaintiff's *Page 382 
memorandum of costs and disbursements. The facts in this connection are that the court's findings of fact and conclusions of law were filed on July 15, 1925. On July 18 the plaintiff prepared, and on July 20 filed, exceptions to the findings of fact approved and adopted by the court. On July 23 counsel for plaintiff served a memorandum of costs and disbursements upon counsel for the defendant and filed the same with the clerk of the court on July 25. On July 28 the defendant moved the court to strike this memorandum of costs from the files upon the ground that it was not filed within the time specified in section 9803, Revised Codes of 1921, which provides: "The party in whose favor judgment is rendered, and who claims his costs, must deliver to the clerk and serve upon the adverse party within five days after the verdict or notice of the decision of the court * * * a memorandum of the items of his costs and necessary disbursements in the action or proceeding," etc.
The above section was taken from California (California Code Civ. Proc., sec. 1033), and first appeared in our laws as section 1867 of the Code of Civil Procedure adopted in 1895. Prior to that time in at least three cases (O'Neil v. Donahue [1881],57 Cal. 226, Mullally v. Irish Am. Benev. Society [1886],69 Cal. 559, 11 P. 215, and Dow v. Ross [1891], 90 Cal. 562,27 P. 409), the supreme court of that state had held that the object of its provisions was to give the successful party who claimed his costs five days after he had knowledge of the decision to file and serve his memorandum, and that if he did have such knowledge, service of a formal notice of that fact was not necessary; i.e., that as used in this section the word "notice" is synonymous with the word "knowledge."
We think this is the correct construction of this provision,[5] and, having adopted the statute after it had been construed by the highest court of the state from which it was taken, it will be presumed that our Legislature in enacting *Page 383 
it intended that the same rule of construction should prevail in this jurisdiction as in California. (McDonnell v. Huffine,44 Mont. 411, 120 P. 792.)
Since it clearly appears from the record that counsel for plaintiff had knowledge of the "decision of the court" as early as July 18, when they prepared their objections and exceptions thereto, and the memorandum of costs and disbursements was not filed until July 25, or seven days thereafter, it follows that it was not served and filed within the time provided in section 9803, and therefore the defendant's motion to strike it from the files should have been sustained. We have not overlooked the case of State ex rel. Cohn v. District Court, 38 Mont. 119,99 P. 139, in which it was held that the word "notice," as used in the expression "after receiving notice of the entry of the judgment" appearing in section 6796, Revised Codes of 1907 (now section 9399, Rev. Codes 1921), contemplated a written notice served in the method prescribed by law. Our construction of section 9803, supra, is not out of harmony with the rule adopted in that case. By inserting the word "receiving" between the words "after" and "notice," it will be presumed that it was the intent to give a meaning to section 9399 different from that conveyed by section 9803, which uses only the expression "after notice." The primary meaning of the verb "to receive," given in the Century Dictionary, is "to take from a source or agency of transmission; get by transfer; as, to receive money or a letter, to receive gifts." This contemplates the actual receipt of some physical object or thing by one from another. So the word "notice" used in the expression "after receiving notice" has reference to something that can be transferred physically from one to another, that is, the written notice mentioned in section 9778, Revised Codes of 1921.
The cause is remanded to the district court, with directions to enter an order striking plaintiff's memorandum of *Page 384 
costs from the files, otherwise the judgment is affirmed. Each party will pay his own costs on this appeal.
Modified and Affirmed.
MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and MATTHEWS concur.