No. 89-217

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

CAROL FOX KARELL,

        Plaintiff and Appellant,

-vs-

AMERICAN CANCER SOCIETY, Montana
Division, Inc., a Montana corp.,

        Defendant and Respondent.

---

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Calvin J. Stacey; Keefer, Roybal, Hanson, Stacey and
        Walen, Billings, Montana

    For Respondent:

        Sidney R. Thomas; T. Thomas Singer; Moulton Law Firm,
        Billings, Montana

---

Submitted on Briefs: Aug. 3, 1989

Decided: September 14, 1989

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

The District Court of the Thirteenth Judicial District, Yellowstone County, granted respondent American Cancer Society's motion for summary judgment dismissing appellant Carol Karell's suit for breach of the implied covenant of good faith and fair dealing, and negligent discharge. The court found that the respondent employer gave the appellant employee no reasonable expectation of job security and therefore created no implied covenant of good faith and fair dealing or duty of reasonable care. Karell appeals this decision. The American Cancer Society cross-appeals the District Court's denial of the respondent's memorandum of costs as not timely filed. We affirm the summary judgment and reverse the denial of respondent's memorandum of costs as untimely filed.

## ISSUES

1. The appellant raises the following issues on appeal. Did the District Court err in concluding on summary judgment:

   a. That as a matter of law the implied covenant of good faith and fair dealing did not arise in the employment relationship between the American Cancer Society and Carol Karell because the respondent gave the appellant no reasonable expectation of job security; and

   b. That the American Cancer Society was not negligent in discharging appellant Karell?

2. The respondent raises the following issue on cross-appeal: Did the District Court err in rejecting the American Cancer Society's memorandum of costs as not timely filed?

2

## FACTS

Stan Wieczorek, the Vice President of the Montana Division of the American Cancer Society (ACS), hired Carol Karell as Division Program Director on January 6, 1986. ACS's policy manual provided for a six-month probationary period during which either party could terminate the employment relationship without notice. Following the probationary period, ACS retained an express "right to discharge without notice or further pay, anyone who has willfully failed in his duties or who has been guilty of misconduct."

During her year-long employment with ACS, Karell received three pertinent memos from officers of the national organization. Each memo discussed business-related topics and included praise for Karell's work on various projects. In April, National Public Education Representative Marcia Nenno praised Karell's "excellent, enthusiastic, well organized" Public Education Committee meeting. In November, Representative Nenno again praised Karell for having accomplished a "GREAT deal" through her enthusiastic efforts. In December, C.P.S. II National Coordinator Melody Davis congratulated Karell on "a job beautifully done" in a data collection project.

During the same period, Karell received several critical letters from Stan Wieczorek, her immediate supervisor. In April Wieczorek reproached Karell for failing to complete a required inventory report. In August he noted that Karell had failed to complete time summary reports and had taken vacation time without a written request. In September Wieczorek again sent Karell a disapproving letter. He complained that she failed to set an itinerary for a field trip and lacked the basic occupational skills to organize volunteer groups for the ACS. Finally, he rebuked Karell for consistently failing to show up for work on time. On January 30, 1987, Wieczorek discharged Karell.

3

In April of 1987, Karell filed suit against ACS in District Court alleging breach of the implied covenant of good faith and fair dealing, negligent discharge, and wrongful discharge. Karell later dropped the wrongful discharge count. On February 6, 1989, the District Court, by memorandum decision mailed to the parties, granted ACS's motion for summary judgment on the remaining charges. On February 14, 1989, the District Court entered judgment and the following day the respondent filed its memorandum of costs with the District Court clerk. The appellant objected to the memorandum of costs and the District Court rejected it as not timely filed.

## 1. a. The Implied Covenant of Good Faith and Fair Dealing

Given these facts, did the District Court err in granting ACS's motion for summary judgment when it found that as a matter of law the implied covenant of good faith and fair dealing did not arise because the ACS gave Karell no reasonable expectation of job security?

The criteria for review of summary judgment are well settled. The standard for review of a summary judgment is the same as that used by the trial court. Frigon v. Morrison-Maierle, Inc. (Mont. 1988), 760 P.2d 57, 59, 45 St.Rep. 1344, 1346. Summary judgment is properly granted when it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), M.R.Civ.P. Once the moving party meets its burden of establishing facts sufficient to satisfy both statutory requirements, the burden shifts to the non-moving party to show the existence of a genuine issue of fact. Gamble Robinson Co. v. Carousel Properties (1984), 212 Mont. 305, 311-12, 688 P.2d 283, 286-87. The non-moving party's evidence of an issue of fact must be substantial and material. Benson v. Diehl (Mont. 1987), 745 P.2d 315, 316, 44 St.Rep. 1455, 1456. Here, we

4

hold that there is no genuine issue of material fact which requires reversal of the summary judgment. When, as in this case, there is no genuine issue as to any material fact, the question of whether or not the implied covenant of good faith and fair dealing arises is a matter of law to be decided by the judge.

In determining whether the covenant of good faith and fair dealing is implied in a particular case, the trial court must look to the employment relationship of the parties.

> Whether a covenant of good faith and fair dealing is implied in a particular case depends upon objective manifestations by the employer giving rise to the employee's reasonable belief that he or she has job security and will be treated fairly.

Dare v. Montana Petroleum Marketing Co. (1984), 212 Mont. 274, 282, 687 P.2d 1015, 1020.


## Respondent's Burden

ACS argues that it has satisfied its summary judgment burden because no attending facts show that the respondent gave Karell any reason to believe that her position was secure and, therefore, the implied covenant against bad faith never materialized. We agree; the facts of this case depict no reasonable expectations of job security.

Karell's immediate supervisor, Stan Wieczorek, criticized Karell's performance on several occasions. In April of 1986, he sent Karell a letter noting that she had failed to compile a "Loan Closet Inventory and Needs Assessment for the Yellowstone/Billings Unit." Noting the adverse effect of Karell's dereliction, Wieczorek stated, "I can't tell you how disappointed I was that I did not receive this report and how embarrassed I was to tell Carolyn and the other volunteers it was not available." Three months later, Wieczorek admonished Karell for taking vacation time without

5

first obtaining written permission as required by the Montana Division's personnel policies. He also noted that she had not filed weekly time summary reports for the third weeks in February, May and August which were required by the organization's auditors. At one point, Wieczorek relieved Karell of responsibility for supervising her secretary because he felt she had no management skills.

A September 26 letter from Wieczorek to Karell illustrates his concerns.

> I was surprised to hear you admit that you did not even know what your itinerary was for 3 of the 4 day field trip [to Great Falls]. It was obvious, you did not put alot [sic] of thought into the reasons for the trip.
>
> It was even more alarming to me for you to admit that you did not know how to organize a volunteer committee. Carol, the reason I hired you as Program Director, is because you had over 6 years experience working with volunteers . . . . Added to this experience, I have provided Division training plus National training at the Western Area New Staff Orientation . . . in February and the New Staff Public Education Conference . . . this past summer.
>
> As you are aware, our Area Directors have an enormous responsibility to their Units and this is one of the reasons we decided to hire a Division Program Director, to give our staff the much needed assistance in Unit organization.
>
> . . .
>
> I need to address one of your frequently stated concerns: too much work and not enough time . . . . One way that would provide you with more time is to simply report to work at 9:00 a.m. every morning. You are not meeting your obligation or demonstrating staff leader-

ship by reporting to work at 9:20 every morn-
ing.

. . .

Carol, please plan to meet with me Wednesday,
October 1st, at 9:00 a.m. to discuss in depth
your role as our Division Program Director.

Defendant's Deposition Exhibit No. 5.

Wieczorek took several remedial steps to improve Karell's performance. He asked her to work closely with knowledgeable personnel in preparing the Inventory and Needs Assessment report. In his September 26 letter, Wieczorek laid out a seven-step procedure for organizing volunteer committees, offered individual training by Marcia Nenno of the national organization, and asked Karell to attend several training workshops. Finally, Wieczorek asked Karell to submit weekly written reports of her activities.

From these facts, it is difficult to see how any reasonable person could believe that their job was secure. We agree with the District Court that the respondent provided sufficient evidence to meet its burden of establishing that as a matter of law the implied covenant of good faith and fair dealing never arose in the employment relationship between ACS and Karell.


## Appellant's Burden

Appellant argues that the laudatory remarks in her three National American Cancer Society memos constitute objective manifestations of job security sufficient to overcome a motion for summary judgment. We do not agree.

Objective manifestations of job security must come from the employer. In Dare we specifically stated "manifestations by the employer" could imply the covenant of good faith and fair dealing. Dare, 212 Mont. at 282, 687 P.2d at 1020. (Emphasis added.)

7

The employer's position is pivotal in the employment relation-ship. The employer has the exclusive right to hire and fire. The employer is responsible for the employee's performance and is in the best position to evaluate it. The employer has the power to rebuke or reward the employee and is the only one with the power to create job security.

As in the present case, compliments from those who are not the employer may be based on incomplete or inaccurate information by persons who are not accountable to the employee. Representative Nenno and Coordinator Davis praised Karell's work on specific projects in which they were involved. They may have been unaware that Karell's immediate supervisor, Stan Wieczorek, who held responsibility for her work and continued employment, had repeated-ly complained about her performance. We agree with the District Court that these non-employer comments do not support an implied covenant of good faith and fair dealing.

The appellant argues that a conversation with Wieczorek during a ski trip in December of 1986 also supports her belief that her position with ACS was secure. Karell alleges that Wieczorek stated that she "had a wonderful future with the American Cancer Society and . . . could go anywhere" in the organization. To overcome a motion for summary judgment, the non-moving party's evidence must be substantial and material. Benson v. Diehl (Mont. 1987), 745 P.2d 315, 316, 44 St.Rep. 1455, 1456. Occasional compliments by an employer are not sufficient to establish a reasonable expecta-tion of job security.

The appellant also argues that she reasonably believed she had job security because Wieczorek did not warn her that her employment was in jeopardy. Such warnings are not mandatory, but may be considered along with other evidence of objective manifestations of job security. Rupnow v. City of Polson (Mont. 1988), 761 P.2d

8

802, 805, 45 St.Rep. 1734, 1739.

The appellant's evidence is distilled to one compliment from her employer and the fact that he did not threaten to fire her before doing so. Karell has established no substantial facts which demonstrate a genuine issue as to whether she had a reasonable expectation of job security. The District Court correctly held that no implied covenant of good faith and fair dealing occurred in this employment relationship. We affirm its summary judgment.

## 1. b. Negligent Discharge

Did the District Court err in concluding on summary judgment that the American Cancer Society was not negligent in discharging appellant Karell?

Montana has recognized the cause of action for negligent discharge from employment. Rupnow v. City of Polson (Mont. 1988), 761 P.2d 802, 806, 45 St.Rep. 1734, 1739. The appellant argued this issue before the District Court, and the District Court entered summary judgment for the respondent. In the present appeal, Karell did not address negligent discharge in either the appellant's brief or the reply brief. Nor has the respondent moved for dismissal of this issue. With no contentions to show that the District Court was in error, we affirm summary judgment on the negligent discharge issue.

## 2. Memorandum of Costs

Did the District Court err in rejecting the American Cancer Society's memorandum of costs as not timely filed?

The pertinent Montana statute provides that:

> The party in whose favor judgment is rendered and who claims his costs must deliver to the clerk and serve upon the adverse party, within 5 days after the verdict or notice of the decision of the court or referee or, if the

> entry of the judgment on the verdict or deci-
> sion be stayed, then before such entry is
> made, a memorandum of the items of his costs
> . . . .

Section 25-10-501, MCA (1987).

The case law on the timing of memoranda of costs has been a slow and sometimes meandering evolution. In McDonnell v. Huffine, we held that the five-day statutory time period begins to run when the District Court signs and files its findings of fact and conclusions of law and not when the court orally announces its decision. Huffine (1912), 44 Mont. 411, 428, 120 P. 792, 797. In contrast, in Miles v. Miles we held that the "notice" under the statute indicated knowledge of the court's decision and that formal notification was not necessary. Miles (1926), 76 Mont. 375, 382-83, 247 P. 328, 331.

In the present case, the respondent makes an alternative argument that the five days begins to run on the date of entry of judgment. This is not necessarily true. Whether the date of entry will be the trigger date depends on when the District Court's decision is final.

In Ballenger v. Tillman, we upheld a memorandum of costs filed within five days after the District Court rendered its final decision. Ballenger (1958), 133 Mont. 369, 382, 324 P.2d 1045, 1052. We rejected the date of the court's findings of fact and conclusions of law as an appropriate trigger because the court allowed the parties to file exceptions to the findings and conclusions effectively staying the final decision. In Davis v. Trobough we interpreted Ballenger as holding that the date of entry of judgment was the appropriate trigger. Davis (1961), 139 Mont. 322, 326-27, 363 P.2d 727, 729-30. Two subsequent cases followed this decision in rejecting the date of the jury verdict. By relying on the date of entry of judgment, these courts postponed filing and

serving the memorandum of costs until after the parties completed all post-trial motions. Poeppel v. Fisher (1977), 175 Mont. 136, 142, 572 P.2d 912, 915; Funk v. Robbin (1984), 212 Mont. 437, 448, 689 P.2d 1215, 1221.

In State v. Helehan post-trial proceedings were not an issue and we returned to the plain language of the statute. Helehan (1980), 189 Mont. 339, 342-43, 615 P.2d 925, 927-28. The statute provides that the time period begins with the "verdict or notice of the decision." We held that the date of the jury verdict triggered the time limitation. We also applied Rule 6 of the Montana Rules of Civil Procedure extending the deadline by correctly excluding intervening Saturdays and Sundays, but, because of the jury verdict, incorrectly allowing three additional days for mailing. Helehan, 189 Mont. at 343, 615 P.2d at 928. Mailing is not necessary in the case of a jury verdict, and the three-extra-days clause of Rule 6 does not apply.

Like Helehan, our most recent decision on this issue followed the plain language of the statute in holding that the date of the jury's decision is the appropriate trigger. R.H. Grover, Inc. v. Flynn Ins. Co. (Mont. 1989), _____ P.2d _____, _____, 46 St.Rep. 1266, 1274. Rule 6, M.R.Civ.P., was not addressed in Grover; an extra three days for mailing and exclusion of weekends would not have affected the outcome of the decision. We also distinguished cases relying on the date of entry of judgment such as Poeppel and Funk, erroneously stating that they were bench trials. We reasoned that in a bench trial the District Court retains more latitude than juries as to when it will render its decision. Grover, ___ P.2d at _____, 46 St.Rep. at 1274.

In the present case we agree with the respondent's argument that Rule 6, M.R.Civ.P. brings ACS's memorandum of costs within the five-day limitation. Because no jury was involved, the issue here

11

is one of "notice" under the statute rather than one of "verdict." The District Court mailed its memorandum decision to the parties on Monday, February 6, thereby beginning the five-day limitation.

The day of notice is not counted, Rule 6(a), M.R.Civ.P.; section 1-1-306, MCA (1987), leaving Tuesday, February 7 as day one. Since the statutory period in question is less than eleven days, intermediate Saturdays and Sundays are excluded by Rule 6(a), M.R.Civ.P. Saturday, February 11, and Sunday, February 12, are eliminated. Monday, February 13, thereby becomes the fifth day. A party receiving notice by mail, as in this case, has an additional three days in which to act. Rule 6(e), M.R.Civ.P. The three additional days, and the limitation on ACS's memorandum of costs, ended on February 16. ACS filed its memorandum in the District Court on February 15 and served the appellant on February 16. We therefore hold that the respondent's memorandum of costs was timely filed and reverse the District Court's decision.

Summary judgment for the respondent affirmed. Dismissal of respondent's memorandum of costs reversed.

Chief Justice

We concur:

Justices

12