## IN RE LUNKE.

(No. 4,298.)

(Submitted May 2, 1919.  Decided June 30, 1919.)

[182 Pac. 126.]

*Attorney and Client—Disbarment—Fraud Upon Client—Trustees—Misuse of Client's Funds—Referees—Findings.*

Referees—Findings—Effect.
  1.  While the findings of a referee are not absolutely conclusive, they should be given the same dignity as a special verdict of a jury or findings of a trial court, and whenever they depend upon conflicting testimony they will be treated as unassailable, if there is substantial evidence to sustain them.

Attorney and Client—Nature of Relationship—Misuse of Funds of Client.
  2.  The relation of attorney and client is one of special trust and confidence; the former, therefore, has no right to mingle funds belonging to the latter with his own, or to profit by their use.

Same—Fraud upon Client—Punishment.
  3.  Where an attorney indorsed a check belonging to his client, deposited it in bank and used the proceeds in the discharge of his private obligations, repaying it only after being called to account by the client some four months later, he was guilty of a fraud upon the latter, under sections 5375 and 5380, Revised Codes, meriting suspension.

Proceeding for the disbarment of R. O. Lunke, an attorney. Respondent suspended.

*Mr. S. C. Ford,* Attorney General, and *Mr. I. W. Choate,* Assistant Attorney General, for the Prosecution.

*Mr. C. B. Nolan* and *Mr. C. A. Spaulding,* for Accused.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

R. O. Lunke, an attorney admitted to practice in the courts of this state, was accused by the attorney general of professional misconduct.  After issues joined, the matter was referred to John G. Brown, Esq., to take testimony and report findings and make recommendations.  The complaint contains five charges.

---

The question of disbarment or suspension of attorney for withholding client's money or property is discussed in a note in 19 L. R. A. (n. s.) 414.

The third was abandoned, and the referee finds that the evidence is insufficient to sustain the fourth.

First. The accused is charged with failing to account for money collected by him for his client, and with concealing from his client material facts which it was his duty to disclose. The referee has found that the evidence is insufficient to sustain a charge of corrupt practice, but that the accused is subject to censure for concealing from his client material facts.

Second. The substance of the second charge is that the accused knowingly rendered false statements of account to his client. That incorrect statements were rendered is admitted by the accused, but the referee has accepted his explanation with reference to all the erroneous items save one, and finds that an overcharge of $50 is seemingly without excuse.

Fifth. The referee finds that the fifth charge is sustained, and recommends that the accused be suspended for six months.

The attorney general and the accused each excepts to the findings.

While the findings of a referee are not absolutely conclusive, [1] they are to be given the same dignity as the special verdict of a jury or the findings of a trial court, and whenever they depend upon conflicting testimony, they will be treated as unassailable if there is any substantial evidence to sustain them. (23 R., C. L. 299, and cases cited.) We are satisfied that the evidence is sufficient to justify the findings returned herein, and they are approved.

Since the last charge involves the most serious consequences, [2, 3] a brief reference to it is made. In 1918, in a criminal action pending in Carter county, wherein J. A. McGlynn, was defendant, one Wm. McGlynn deposited with the clerk of the district court $5,000 as cash bail. Thereafter, about July 11, 1918, Judge Hurley made an order permitting the substitution of a personal undertaking, and the substitution was made. Mr. Lunke, acting for Wm. McGlynn, secured from the treasurer of Carter county a return of the money, taking in the name of Lunke & Hoover two checks issued by the treasurer, one for $3,000 and one for $2,000. The checks

were dated July 13. About July 15 Lunke indorsed the check for $3,000 and caused it to be deposited to the credit of McGlynn, explaining to his client, about the same time, that there would be some delay attending the payment of the remainder, as the officials of Carter county had raised the question of Judge Hurley's authority to order the substitution, but that in his (Lunke's) opinion the reason for holding up the payment was because the county was short of funds. In the meantime, Lunke had taken the check for $2,000 to his office in Billings, had indorsed it and left it with his clerk, with instructions to hold it a few days and then deposit it for collection. The record does not disclose just when it was deposited, but on July 24 it was paid by the bank upon which it was drawn, the money received and deposited to the credit of Lunke & Shea, and nearly all of it paid out in the discharge of the firm's private obligations. In his conversation with McGlynn, Lunke never intimated that he had the check for $2,000, but about September 1 McGlynn made inquiry of the clerk of the court, ascertained the facts, and called Lunke to account. Lunke gave his note for the amount, and in November following paid it, with interest.

We refrain from comment upon the explanation offered by the accused. He must have known that the money deposited as cash bail did not belong to Carter county, could not be used by the county, that repayment of it could not deplete the county funds, and that there was not and could not be any reason for delaying the payment of the check for $2,000. There is not any excuse for the failure to deliver this check to McGlynn at the time the other one was delivered. Neither is it any answer for the accused to say that he did not know that this trust fund had been mingled with his own and used. It was his business to know that such misuse of the fund had not been made.

The relation of attorney and client has always been regarded as one of special trust and confidence. The funds committed to the custody of the accused in this instance were trust funds, to which he had no claim. His abuse of confidence is inexcusable, and his misuse of the funds was a fraud upon the client. (Secs. 5375, 5380, Rev. Codes.) He had no right in law

or morals to mingle the trust funds with his own private property, or to profit by the use of funds belonging to his client. (*In re Allard's Guardianship,* 49 Mont. 219, 141 Pac. 661.)

The supreme judicial court of Massachusetts has said: "It is one of the primary duties of a trustee to keep the funds of the trust separate from his private funds, and not, by mingling them together, to expose the trust funds to the risks to which his own property may become liable." (*Sparhawk* v. *Sparhawk,* 114 Mass. 356, 358.)

The record discloses that the general manner in which the accused has conducted his business, if persisted in, must of necessity involve him in more serious difficulties.

Many men, prominent in professional and business life, have testified that, prior to the time these charges were made, the accused bore an excellent reputation and was considered entirely trustworthy in the practice of the law. It is further disclosed that he has a considerable amount of business now on hand, and that the interests of his clients must suffer greatly if he is deprived of the right to practice for the remainder of the year. To the end that the burden of punishment shall fall upon him, rather than upon his clients, and that every opportunity may be afforded him to reform and correct the manifest abuses in his practice, we have concluded to substitute, for the punishment recommended by the referee, a shorter period of suspension and the payment of the expenses incurred by the state in this proceeding, as a condition precedent to his right to reinstatement.

It is ordered that the accused, R. O. Lunke, be suspended from his office as attorney and counselor at law. On or after August 1 of this year, upon paying to the clerk of this court the amount of costs incurred herein by the state, he will be reinstated without further order.

MR. JUSTICE COOPER concurs.

MR. CHIEF JUSTICE BRANTLY, being absent, takes no part in the foregoing decision.