## IN RE McCUE.

(No. 5,818.)

;(Submitted July 7, 1926. Decided July 17, 1926.)

[248 Pac. 187.]

*Attorney and Client—Disbarment—Withholding Money from Client—Issuing Worthless Checks—Perjury.*

> 1. An attorney, who for many months concealed from a ‘client the fact that he had collected a bill entrusted to him for collection and did not make payment until disbarment proceedings had been instituted, had committed perjury in a court proceeding, and had issued worthless checks under circumstances indicating that they would be put in circulation in the business world, *held* guilty of such professional misconduct as to merit disbarment.

[1] Attorney and Client, 6 **C. J.**, sec. 40, p. 583, n. 87; secs. 47, p. 589, n. 62; sec. 50, p. 591, n. 69; sec. 56, p. 597, n. 12 New; sec. 77, p. 607, n. 90.

PROCEEDINGS for the disbarment of T. F. McCue. Judgment of Disbarment.

*Mr. L. A. Foot,* Attorney General, and *Mr. I. W. Choate,* Assistant Attorney General, for the State.

*Mr. C. A. Spaulding,* for Respondent.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is an original proceeding instituted by the attorney general against T. F. McCue, an attorney and counselor at law admitted to·practice in the courts of this state, for disbarment.

The original complaint containing two specifications was filed September 15, 1925, and the defendant McCue answered thereto November 13, 1925. Thereafter the attorney general, after notice to counsel for defendant, asked for and obtained

1. Disbarment of attorney for failure to account for money of client, see note in 43 **A. L. R.** 54. See, also, 2 **R. C. L.** 1095.

leave to file an amended complaint against Mr. McCue by the addition of two additional specifications. The amended complaint was served upon counsel for defendant and was filed in this court upon January 15, 1926. Specification I of the original complaint was amended as is shown later; specification II was recited in the amended complaint without change.

No appearance by answer or demurrer having been made to the amended complaint, upon February 15, 1926, the attorney general filed a praecipe for default of the defendant, which was entered by the clerk. However, all concerned have treated the answer filed to the original complaint as an answer to paragraphs I and II in the amended complaint.

In due time this court appointed Hon. E. K. Cheadle referee to take testimony in the matter and to report his findings and recommendations. The referee proceeded to take testimony in the matter, and upon July 1, 1926, filed his findings of fact and recommendations. The referee reports that in his opinion the evidence introduced does not sufficiently support the charge contained in specification I; that specification III was abandoned by the attorney general; that specifications II and IV are supported by the testimony, and consequently recommends that Mr. McCue be disbarred.

The attorney general has moved to adopt the findings and recommendations of the referee, and counsel for defendant has moved to reject the findings based upon specifications II and IV, and for a dismissal of the proceedings.

We have examined the entire record carefully and shall now state our conclusions upon all specifications except III in support of which no evidence was offered.

1. Specification numbered I, as set forth in the original complaint, was based upon the allegations that on or about the seventeenth day of November, 1923, one H. A. Burns employed Mr. McCue as his attorney to collect a claim due Burns from the Gordon Campbell Petroleum Company in the sum of $1,050; that Burns paid to McCue the sum of $15 for the purpose of defraying court costs; that McCue collected from the Gordon Campbell Petroleum Company the sum of $600 some time dur-

ing the summer of 1924 "and has ever since failed, neglected and refused and still fails, neglects and refuses to account for said sum of $600, or any part thereof" although demand therefor has been repeatedly made by Burns; that McCue had retained the sum of $600 and converted the same to his own use and benefit. McCue in answer to this specification denied that H. A. Burns had ever employed him or that he had ever received any claim from H. A. Burns, but alleged the fact to be that he did receive from Mrs. M. J. Burns of Centralia, Washington, a claim against Gordon Campbell "and that he has fully accounted to the said Mrs. M. J. Burns for the proceeds of said claim and has remitted the same to her."

In the amended complaint the same allegations were made except that it was alleged that McCue refused to account for the sum of $600, or any part thereof "except the sum of $377.20, which was remitted on the 4th day of November, 1925, and after the filing of this action," and it was charged that McCue had converted the remainder, $312, to his own use and benefit.

There is no conflict in the evidence bearing upon this specification. The facts are that in November, 1923, H. A. Burns and Mrs. M. J. Burns employed Mr. McCue as an attorney to collect $1,050 from the Gordon Campbell Petroleum Company, and paid to him $15 for court costs. Mrs. Burns conducted the correspondence with McCue. McCue collected a portion of the money due Burns from the debtor, and it is reasonably certain he did so in 1924. On March 14, 1925, C. A. Springmyer, cashier of the Gordon Campbell Petroleum Company, addressed to Mrs. Burns a letter in the following tenor: "Enclosed, we hand you check in favor of H. A. Burns for $425.00 in full settlement of account. The balance of this account was paid to your lawyer at Great Falls some time ago, some of it more than a year ago. We are assuming that it will be satisfactory with you to send the check to you direct. This makes a total of $1,025.00 paid, and note your letter states $1,050.00. The check was given Mr. Burns in the field, but our records showed the correct amount as $1,025.00."

More than a month and a half after this proceeding was commenced McCue, from Cleveland, Ohio, wrote Mrs. Burns a letter in which he enclosed a draft for $377.20, and in which he said in part: "You have been claiming that I collected $600.00 but the fact is as I have it, Campbell's office paid me $100.00 at one time, $462.50 another time making $562.50, they always claimed that they owed your husband $1,025.00 and you claimed $1,050.00. However, in order to avoid further delay and expense of going back to Great Falls and checking this matter up, I am figuring it on the basis of $600.00. You sent me for expenses, $15.00, this makes together with amount you claim, I received, $615.00. My attorney fees in this case are $250.00, expense of making three trips to Kevin-Sunburst field and looking over records at Shelby, was $62 and some cents but I will throw off the odd cents and figure it at $62.00, which makes my bill $312.00. Deducting this $312.00 from $615.00, leaves $303.00. On account of the delay in remitting this money, I am allowing you one year's interest, $49.20 and am discounting my attorney fees $25.00, which would make a total credit to you of $689.20, deducting my bill of $312.00 leaves $377.20, the draft enclosed."

In the letter he mentioned the fact that the balance due Mr. Burns had been remitted directly to Mrs. Burns by the company. As we have noted, that balance was remitted on March 14, 1925, and McCue did not remit the money which he had collected long before that—some of it more than a year and a half before, if Springmyer's statement is correct—until after this proceeding was commenced. Mr. and Mrs. Burns did not know McCue had collected any money from the Gordon Campbell Company until the letter of March 14, 1925, was received.

There was no misunderstanding between McCue and his clients concerning fees. No explanation is offered for his misconduct in withholding this money. There is no extenuating circumstance.

Doubtless the referee concluded the allegations of specification I were not sustained because the pleader in the amended complaint charged McCue with withholding and converting

$312 only to his own use. But the gravamen of the charge against McCue upon this specification is not narrowed to the allegation that he withheld that sum of money. The essential question is, was he guilty of misconduct or malpractice as shown by the pleading and the supporting facts? Beyond doubt he was. He not only collected the money and withheld it for a long period but kept his clients in the dark respecting the matter; in effect he concealed from them that he had collected any part of their claim. They did not know he had done so until they received the letter from Springmyer. Not until the lapse of nearly seven weeks after the attorney general had commenced this proceeding and after the issuance of summons did Mr. McCue remit to his clients a portion of the proceeds of the collection made by him more than a year before.

When making inquiry into the fitness of members of its bar charged with unprofessional conduct, this court is not inclined to permit obscuration of the issue by technical rules. It will seek the truth from facts before it; it will endeavor to ascertain whether the accused has measured up to the moral standard required of one entitled to practice his profession in this state. If he has not, if he has shown by his conduct that he is unworthy of confidence, this court will exert its disciplinary powers even to the disbarment of the offender. The facts shown, standing as they do without extenuation or excuse, justify a judgment of expulsion of T. F. McCue "from the profession whose honor he has stained and whose reputation for fidelity his malpractice tends to impair." (*In re Burke*, 55 Mont. 303, 176 Pac. 421; *In re Lunke*, 56 Mont. 226, 182 Pac. 126; *In re Jewell*, 60 Mont. 602, 201 Pac. 266; *In re Slagle*, 62 Mont. 49, 202 Pac. 1117.)

2. Specification II sets forth that on or about September 7, 1923, in an action wherein C. W. Schmidt and A. A. Coulahan, copartners as Schmidt & Coulahan, were plaintiffs, and Northfield Oil Company, a common-law trust, F. H. Sturm, T. F. McCue and John C. Noren, Trustees, were defendants, then pending in the district court of Cascade county, plaintiffs secured an order of the court citing the defendants Sturm and

McCue to appear before the Hon. J. B. Leslie, Judge, on the fourteenth day of September, 1923, to testify concerning the property of the defendants, and also a restraining order forbidding the defendants to dispose of any of their property until the further order of the court; that on the fourteenth day of September, 1923, in the above-entitled cause, Judge Leslie presiding, McCue took oath that he would testify truly in the case then and there before the court, and he testified falsely in a matter material to the inquiry. In the answer McCue admitted that he was duly sworn at or about the time alleged in the complaint, and that he testified substantially as alleged in said complaint, "but the defendant denies that the testimony so given was false and untrue, alleges and reaffirms the truthfulness of the testimony so given." Other allegations of the answer are not important.

The referee found the fact to be that in the cause above entitled, and at the time alleged in the complaint, the defendant T. F. McCue having taken oath before the Honorable J. B. Leslie, the judge presiding, that he would testify truly in the said matter, wilfully, knowingly, corruptly and feloniously testified falsely in the same matter and thereby did commit perjury, contrary to the form, force and effect of the statute in such case made and provided. The evidence sustains the finding that, being sworn to testify truly before Judge Leslie, McCue testified falsely upon a matter material to the inquiry, and for his wilful perjury he merits disbarment.

3. Specification IV charged that McCue has been guilty of deceit, malpractice, crime and misdemeanor involving moral turpitude, in that he had committed grand larceny as follows: that on or about the 27th of July, 1925, in the county of Toole, state of Montana, McCue did knowingly, wilfully and feloniously commit grand larceny in that he did then and there with intent to defraud make, draw and deliver to one Richard Hillis, two checks upon the First National Bank of Great Falls, Montana, in the sum of $200 each, one of which checks he signed T. F. McCue, and the other one of which he signed T. F. McCue, Trustee, he then and there well knowing that

he had not sufficient funds in or credit with the First National Bank of Great Falls, Montana, either in his own name or as trustee for the payment of said checks, or either of them. It is further alleged that at that time and place and in order that said Hillis might obtain cash on the checks, McCue personally said to one Barney Harcourt that the checks were good and would be paid by the First National Bank of Great Falls, Montana, upon presentation, and said Barney Harcourt, relying upon the statements of McCue, did then and there cash the checks and pay to Hillis $400 therefor; and that the checks were presented for payment and refused by the bank for the reason that there were not sufficient funds in the bank to the credit of T. F. McCue or T. F. McCue, Trustee, to pay them, and that McCue has failed, neglected and refused at all times since to make good the said checks and thereby has defrauded Harcourt of the sum of $400.

In the referee's opinion the evidence sustains this charge and he so reported. But there is no evidence in the record to sustain the allegation that McCue said anything to Harcourt, nor that Harcourt relied upon any statement of McCue, nor that McCue ever received notice that the checks had not been paid. The evidence shows that when McCue gave the checks to Hillis he told Hillis when asked if the checks were good "that they were absolutely good." McCue then did not have and never had an account with the First National Bank of Great Falls in the name of T. F. McCue, and when the check signed T. F. McCue, Trustee, was drawn, he had in that account but $4.74, and thereafter his maximum credit in that bank was $55.84. Both checks were dishonored upon presentation. It may be conceded that the referee's findings upon specification IV are not sustained by the evidence in some important particulars and that the evidence cannot be held to sustain the charge of grand larceny, under section 11369, Rev. Codes, 1921; but the fact remains that he executed and delivered to Hillis two worthless checks under circumstances indicating clearly his expectation that the checks would be put in circulation in the business world. The moral quality of this act needs no comment.

The judgment of the court is that T. F. McCue be removed from his office as attorney and counselor at law, that his name be stricken from the roll, and that he be forever disbarred and prohibited from practicing law in this state. ·

ASSOCIATE JUSTICES HOLLOWAY, GALEN, STARK and MATTHEWS, concur.