MILES, Appellant, *v.* MILES, Respondent.

(No. 6,480.)

(Submitted September 28, 1929. Decided October 30, 1929.)

[282 Pac. 37.]

*Mr. Rudolph Nelstead,* for Appellant, submitted a brief and argued the cause orally.

*Messrs. Loud & Leavitt,* for Respondent, submitted a brief; *Mr. W. B. Leavitt* argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

By decree the existence of a partnership between the plaintiff and the defendant in the conduct of sheep raising having been determined (*Miles* v. *Miles,* 76 Mont. 375, 247 Pac. 328) on the basis of a two-fifths interest in the plaintiff and a three-fifths interest in the defendant, the matter of an accounting between the partners was referred to a referee appointed by the court. The partnership continued for more than two years, but was dissolved on January 6, 1923, the defendant then assuming exclusive possession and control of all of the sheep. After hearing evidence the referee made and filed his report. Exceptions were taken to the findings of the referee by both the plaintiff and defendant, and later the

court made its own findings of fact and conclusions of law upon which judgment was entered in the plaintiff's favor for the sum of $1,156.23. The plaintiff has appealed from the judgment, and his several assignments of error all relate to mistakes in accounting. Each will be considered in the order presented.

We enter upon a consideration of this appeal bearing in mind the basic principles of law applicable, viz., that "each member of a partnership must account to it for everything that he receives on account thereof, and is entitled to reimbursement therefrom for everything that he properly expends for the benefit thereof, and to be indemnified thereby for all losses and risks which he necessarily incurs on its behalf." (Sec. 7991, Rev. Codes 1921.) And "in the absence of special agreement on the subject, the profits of the firm upon its dissolution are the balance remaining after the payment of all its debts, including the liabilities to its members for advances and for capital." (47 C. J., p. 75.)

The district court in its finding No. 1, upon which the final judgment herein is predicated, found "that at the beginning of the partnership, the property consisted of 955 ewe lambs, 250 old ewes and 9 bucks, or a total of 1214 head of sheep; that included in the number of 955 ewe lambs were 475 ewe lambs purchased from Robert Eccles; that as found by the jury the plaintiff owned two-fifths of said property and the defendant three-fifths of said property." The plaintiff asserts that he "accepts the finding as conclusive," and therefore confines his argument on this appeal to transactions arising during the course of the partnership. The defendant also admits that this finding is controlling.

1. The plaintiff asserts that the court was in error in overruling his exception to the court's finding of fact No. 6 for the reason "that there is no legal, competent or sufficient evidence at all that the value of the ewe sheep belonging to the partnership on hand at the time of the dissolution was $10.50 per head; that it appears from the record that the sheep in question were breeding ewes and of a greater value than

ewes placed on the stock market, and that the referee in his report found, basing his finding upon conflicting evidence, that the value of said sheep was $15.00 per head." Accordingly, he argues that this finding should be amended by striking therefrom the valuation of $10.50 per head and inserting in lieu thereof the valuation of $15 per head. As indicated by the objection the referee had found the value of the sheep to be $15 per head, which value was by the court reduced to $10.50 per head.

Generally when a reference of a case is made to a referee to report the facts, his findings have the effect of a special verdict of a jury (sec. 9385, Rev. Codes 1921; *In re Lunke,* 56 Mont. 226, 182 Pac. 126; 23 R. C. L., p. 299); however, where, as in this case, the order of reference provides that the referee shall take testimony and state an account between the parties, but does not authorize him to hear and determine the issues, his findings cannot be given the effect of a special verdict, since the force to be given to the report of a referee depends not only upon the nature of the action but upon the order of reference (*Murphy* v. *Patterson,* 24 Mont. 575, 63 Pac. 375). The rule is that the terms of an order of reference determine the scope of the referee's authority; and a referee who is appointed to state an account between parties has no authority to determine the whole issue; and the court may disregard the findings of the referee allowing or disallowing specific items in an account. (*Bradshaw* v. *Morse,* 20 Mont. 214, 50 Pac. 554.)

In this case the referee was by the order of reference required to hear the evidence relating to the accounting between the plaintiff and the defendant and to ascertain all facts necessary to enable the court to make determination. Therefore, under the terms of the order, the findings made by the referee were, at most, advisory. (*Bradshaw* v. *Morse, supra.*) It now devolves upon us to find in the record, if possible, evidence to sustain the finding as to the valuation of the sheep made by the court; for the rule is that a finding by the trial court unsupported by evidence, or which is based on specula-

tion rather than positive testimony, cannot be upheld. (*Tuttle* v. *Pacific Mutual Life Ins. Co.*, 58 Mont. 121, 16 A. L. R. 601, 190 Pac. 993; *Ryan* v. *Quinlan*, 45 Mont. 521, 124 Pac. 512.)

The plaintiff estimated the value of the ewes at "about $15" per head. He testified that they were more valuable in January than the previous September; that at the time they were practically wintered and in good shape, and that he would not have taken $20 per head for his portion thereof. The defendant testified that he did not believe that the sheep would have sold for as much as $8.50 per head; and Shirley Wright, an experienced sheep man in the community, who was possessed of an intimate knowledge of the sheep in question, estimated their value at "somewhere around $9.00 and $10.00" per head. He testified that they were "good ewes," but at that time he was of opinion that "a man could have picked the country for nine or ten dollars." Evidence of stock market quotations from leading stock markets as of date January 6, 1923, was by stipulation provided the court for its information after the referee's report had been made and filed; but in the condition of the record the same was of no evidentiary value in determining the value of the sheep in question. To arrive at a valuation of $10.50 per head the court was required to enter into the realm of speculation as to the market value of the sheep, which was by witnesses fixed at from $8.50 to $20 per head, notwithstanding the fact that the court had before it the finding of the referee, who saw and heard the witnesses, fixing the value of the sheep upon definite proof at $15 per head. Here the court, in arriving at a valuation of $10.50 per head for the sheep, must have indulged in guesswork as to their probable fair market value based upon its general knowledge, market reports, and testimony estimating their value at from $8.50 to $20 per head, as there is no definite evidence to sustain a finding that the sheep had a market value of $10.50 per head. There was no witness who so testified, nor is it possible upon reference to the market reports to find a basis for such specific finding as to value. In our opinion the find-

ing of the trial court is not sustained by the evidence. In the condition of the record this court is unable to determine the fair market value of the sheep at the time of the dissolution of the partnership, and therefore the finding of the district court is set aside, and it is directed to hear further testimony on the question of the value of the sheep and to make a finding based upon definite and satisfactory evidence.

2. Among other items of expense advanced by the defendant, and by the court charged against the copartnership, were certain payments made for labor to which the plaintiff made objection. Such charges are as follows: Labor, Wright $227.90; labor, McCory $62; labor, Wright $900; labor, Lanning $71; labor, Wright $168.75; total $1,429.65. The plaintiff objected to these items of expense as a charge against the copartnership for the reason by him advanced "that it appears affirmatively from the record, by uncontradicted testimony, that the expense for these items of labor was incurred by the defendant, and that such labor was contributed for the benefit of the partnership by the defendant in consideration of the personal services rendered to the partnership during its existence by the plaintiff." It is argued that the court was in error in overruling plaintiff's objection made to the finding.

Upon a careful review of all of the evidence, we are of opinion that the objection is well taken as to the labor charges made against the partnership for money paid to Shirley Wright, and that the total amount thereof, viz., $1,296.65, is chargeable to the defendant alone. Wright was employed by the defendant personally, represented the defendant, was paid by the defendant, and was looked to by the defendant in the conduct of the partnership business; and the agreement appears to have been that the defendant was to employ one man to offset the personal services rendered by the plaintiff. The plaintiff testified that under the terms of the partnership agreement he was to have general supervision over the conduct of the sheep and their herder, and that the defendant

was to furnish the herder, and handle the money incident to the business. He testified:

"Q. What part of the partnership work did you do? A. I tended the camp and looked after the herder; looked after the sheep in general.

"Q. Will you state to the referee just what the arrangement was as to the partnership business? A. I was to tend camp, such as moving the camp, hauling the grub, buying the grub, looking after the sheep and looking after the herder.

"Q. And you were to put in your entire time? A. Yes.

"Q. When you speak of a herder, who was to furnish the herder? A. Mr. Charley Miles.

"Q. Was he to devote any part of his personal time to looking after the sheep? A. No, he kind of looked after the business part of it; receiving the money.

"Q. Who handled the money? A. Mr. Miles he done the selling, practically all of it."

And further: "Q. How about the hired help, did you have anything to do with hiring either Wright or McCory?" To which he made negative reply, and stated that that was a part of the defendant's agreement. The plaintiff further testified: "Q. And Shirley Wright during the year 1921 was herding for the partnership? A. He was doing Charley Miles' part of the work; Charley Miles was to do one-half of the work and me the other half. I hadn't nothing to do with paying Shirley Wright at all. * * * It didn't make any difference to me whether Charley Miles or Shirley Wright—if he furnished men in his place it was the same thing." As to money advanced by him in 1921, the defendant testified:

"Q. Did you pay any hired help? A. Yes, Shirley Wright, $227.90.

"Q. Did you pay anyone else? A. Paid the McCory kid $62.00."

He further testified as to additional money by him paid out for labor between November 1, 1921, and November 1, 1922:

"Q. Did you furnish any labor that year? A. Paid Shirley Wright $900. * * *

"Q. Pay any other help? A. Roy Lanning $71.00." And further that between November 1, 1922, and January 6, 1923, he paid Shirley Wright for labor $168.75.

During the copartnership relation Wright worked for a total of twenty-six months and six days at an agreed monthly salary of $75. The amount found to have been paid him by the defendant, $1,296.65, was short $668.35 of the amount due had Wright worked continuously. However, such shortage of itself is not alone sufficient to justify the charge of other items of labor, such as lambing and shearing expenses to the defendant as a part of the hired help he was to furnish. The evidence as to the nature of the work done by McCory and Lanning is not clear, but such expenses appear to have been necessary in the conduct of the business and a proper charge against the partnership.

Under the testimony as it stands in the record without contradiction, the partnership relation having been established, it seems clear that the defendant is separately chargeable with the items of wages paid to Shirley Wright. We may wonder at the terms of the contract pleaded, proved and adjudicated; yet it is not within our province to modify it. We are controlled by the record facts, and therefrom it appears that the item of $1,296.65 paid to Wright for labor is not a proper charge against the copartnership.

3. As a partnership expense, the court allowed the defendant a credit for money advanced for the benefit of the partnership amounting to $477.50 for a well drilled. The plaintiff specifically excepted thereto upon the grounds "that there is no legal, competent or sufficient evidence or any evidence at all that the following item, to-wit: well drilled, $477.50, is an expense chargeable to the partnership; that it appears affirmatively from the record that the plaintiff, J. E. Miles, did not consent to the drilling of the well, or have any knowledge of the drilling of the well until after the construction thereof commenced, and that said well constituted a permanent improvement on the ranch belonging to the defendant, C. W. Miles; that if a charge is made against said part-

nership for the drilling of the well in question, then the partnership is, in fact, paying twice for the use of the well, in that said partnership is also charged, by the court's findings, with the sum of $1,000.00 for the use of the C. W. Miles ranch, during the partnership, on which said well was drilled; that the item of $477.50 for the well drilled be stricken entirely as an expense of said partnership." Error is predicated upon the refusal of the court to sustain such exception to the finding.

We are of opinion that this exception is well taken, and that the court should have stricken this item as a partnership expenditure. Upon the subject the defendant testified as follows:

"Q. Was there any improvements or expenses incurred in the providing water for the sheep during the first year? A. Yes, a well drilled.

"Q. Where? A. Down in the bottom.

"Q. Was that on account of these sheep? A. Certainly.

"Q. Was it necessary for the running of the partnership sheep? A. It is necessary to always have water for sheep.

"Q. You didn't have enough for these sheep? A. Didn't have enough so I had to drill a well.

"Q. What was the cost of the drilling of the well?

"A. $477.50.

"Q. Do you consider that was a legitimate expenditure on behalf of the partnership? A. Absolutely.

"Q. Was that well used during the continuance of this time for the benefit of these sheep? A. It was. * * *

"Q. You mentioned a well was dug on your place during the year 1920 and 1921,—what was on your place—you didn't have any water on your place then? A. Yes, I had a well at the house.

"Q. Where did you get your information from that the well cost $477 and why do you charge that to Joe? A. I just charged it up as part of the expense; I expected to have it deducted, part of it.

"Q. It was a permanent improvement on your place? A. Absolutely, but nevertheless I had to put out the money at that time to drill that well. * * *

"Q. In relation to this well, was this well, the drilling of this well brought about by reason of the running of the sheep?

"A. Sure.

"Q. Down in the timber? A. Yes, sir.

"Q. How far from your house? A. Three-quarters of a mile.

"Q. You had no water close to your feeding ground that winter? A. No.

"Q. That was one of the reasons you had to drill the well for the sheep? A. Yes."

In rebuttal the plaintiff testified: "Q. How about the well on the Charley Miles,—did you have anything to do with the digging of that well? A. Now, they were drilling the well the first I knew it. Didn't say anything to me about it at all; it was drilled out in the bottom; possibly between a quarter and half a mile from the other well that was furnishing lots of water."

While allowing this expenditure made by the defendant as a partnership charge incident to the operation of the business, the court also allowed the defendant $500 per year rental of the land upon which the well was drilled as will be later more particularly noted. The well constituted a permanent improvement to the corpus of the defendant's land and was by him drilled without consulting his partner in the sheep business; and in view of the circumstances made to appear as to the arrangement for handling the sheep, we do not see how it can possibly be considered as a partnership expense.

4. Error is predicated upon the court's allowance to the defendant for $1,000 as rental for the use of his land as a charge against the copartnership, for a period of two years, November, 1920, to November, 1922, $500 per year. The plaintiff's exception made to the court's finding is that there is no legal, competent or sufficient evidence to warrant a charge for rental of the defendant's ranch against the part-

nership "for the reason that it appears affirmatively from the record, without contradiction, and by the defendant's own testimony, that there was no agreement between the partners that the partnership should pay for the use of the C. W. Miles' ranch during the winter months, while on the other hand it appears from the plaintiff's testimony that it was agreed between the partners that the plaintiff should supply the summer range for the sheep, and the defendant the winter range."

From a very careful review of the evidence, we are of opinion that the plaintiff's exception made to the finding is well taken and that the court should have sustained it, thus eliminating $1,000 account rental of the defendant's ranch as a charge against the copartnership. The amended complaint alleges "that under the partnership agreement, defendant was to furnish a ranch and winter range for the running of said partnership sheep, and plaintiff was to furnish a ranch and summer range for running said sheep, and that the plaintiff and defendant furnished said ranges and ranches pursuant to said agreement," and the proof sustains such allegation.

The defendant in his testimony persists in asserting that no partnership relation existed between the parties, and it is on that theory that he now predicates right to recover the lease value of his land during the time the plaintiff and defendant were engaged in the sheep business. However, the existence of the partnership relation having been established, we are compelled to measure the mutual obligations of each partner to the other on the basis of the testimony introduced respecting their transactions while such relation existed. The defendant testified that there was no understanding or agreement whereby he was to charge the copartnership $500 per year for the use of his ranch in the conduct of the sheep business; and the plaintiff states that the agreement was that the sheep were to be wintered on the defendant's ranch in Powder River county and summer ranged and fed at the plaintiff's ranch in Carter county, and this arrangement appears to have been carried out, the plaintiff making no claim for the use of his

ranch in caring for the sheep during the summer months. Shirley Wright, the herder of the sheep in 1921 and 1922, states that the sheep were ranged at the ranch of the plaintiff during both years from about the first of May until the fall of the year. And the plaintiff stated that the sheep were ranged at his place each year from some time in April to the 1st of November.

5. It is contended by the plaintiff that the court erred in overruling his exception made to the credit of $3,287.85 allowed the defendant as a charge against the partnership for supplies furnished to the copartnership between November 1, 1920, and January 6, 1923. It is argued by the plaintiff that the supplies furnished by the defendant could not have exceeded in amount the sum of $25 per month for each herder and employee, and that at no time could the supplies furnished have cost to exceed $50 per month. Thus it is sought to have this item reduced from $125 per month to $50 per month. We have made careful examination of the testimony and find the same conflicting. There is ample evidence to support this finding of the court, and in our opinion it preponderates in support of the finding made. It will not be disturbed.

6. The defendant's contention of right to allowance of interest at the legal rate for money advances by him personally made for the benefit of the copartnership has merit. Unquestionably it is the settled law that one who expends more than he is required to advance in the conduct of the business of a general copartnership is entitled to interest on each such item of expenditure from the date thereof to the extent of the amount advanced as the proportion of his associates. It requires no citation of authorities to support this statement. It amounts simply to a loan of money by one to another, and in the absence of agreement, the law fixes the rate. The defendant made such expenditures for labor as shown by subdivision 2 of the opinion and for supplies furnished as appears from subdivision 5 of the opinion. The dates of such advancements do not appear with sufficient accuracy in order to permit of the computation of interest.

Therefore, upon further hearing of the case before the court, evidence will be taken as to the dates of the advances made by the defendant for the benefit of the copartnership and interest will be computed and allowed him to the extent of two-fifths of the amount of the interest on each item so expended at the rate of eight per cent per annum. There being no funds in the copartnership account, and the money having been advanced by one partner for the benefit of the firm, upon an accounting between the partners, the partner so advancing money is entitled to charge therefor to the extent of his partner's share so advanced, together with interest on such amount at the legal rate.

7. While the defendant did not enter a cross-appeal from the judgment, yet he contends that since the case is one in equity, it is within the province of this court upon a review of all of the evidence to see that no substantial injustice is done the defendant by the district court's findings and judgment. This contention of the defendant is made on the theory that there was in fact no partnership relationship existing between the parties, and that the plaintiff made no substantial contribution to the capital investment. However, in our opinion further contention on this subject has been foreclosed by the judgment heretofore entered; and by the court's finding No. 1, based upon substantial evidence, as to which neither party has made complaint.

For the reasons stated the cause is remanded to the district court of Powder River county with directions to take further evidence respecting the market value of the sheep and make determination thereof, and thereupon modify its finding as to the value of the sheep and amend the judgment accordingly, and in other respects to make amendment of the judgment in accordance with the views herein expressed. The plaintiff will recover his costs incurred upon this appeal.

Mr. Chief Justice Callaway and Associate Justices Matthews, Ford and Angstman concur.

Rehearing denied November 25, 1929.