[S. F. No. 13987. In Bank.—November 3, 1930.]

In the Matter of the Application of THOMAS F. McCUE for Admission to the Bar of California.

Clarence G. Atwood for Applicant.

Fitzgerald, Abbott & Beardsley for Respondent.

THE COURT.—The applicant herein, Thomas F. McCue, in the month of December, 1927, filed in due form with The State Bar of California his application to practice law in this state, basing the same upon his certificate to practice law in the state of Montana. This application was by the Board of Governors of The State Bar referred to the Committee of Bar Examiners. At a hearing held before said committee on February 24, 1928, the application of the said Thomas F. McCue for permission to practice law in this state was denied "on the ground that he does not possess the necessary qualifications".

On October 7, 1929, applicant requested permission of the Board of Governors of The State Bar to renew his application. Before acting on this request of applicant, the Board of Governors appointed a special committee consisting of three of its own members, to wit: Judge M. C. Sloss, a former member of this court; Francis V. Keesling, and Joe G. Sweet, to examine the facts and circumstances involved in McCue's application. The special committee called a meeting at which the applicant was present and at which time he was fully interrogated by the members of the special committee as to his past life and as to his activities in the prac-

tice of law in the state of Montana and elsewhere. Upon the conclusion thereof, the special committee reported to the Board of Governors the facts developed at said hearing. Thereafter and on February 21, 1930, the Board of Governors, after considering the report of this special committee, passed the following resolution:

"Whereas, the application of T. F. McCue for recommendation that he be admitted to practice law in California has heretofore been denied by the Committee of Bar Examiners; and

"Whereas, the Board of Governors has been requested by said applicant to review the action of the Committee of Bar Examiners, and said Board of Governors, through a special committee of three of its members, has examined the facts and circumstances of the application; and

"Whereas, in the opinion of this board, the facts developed by the further inquiry of said special committee, together with the lapse of time since the original denial of the application of said McCue, make it proper and advisable that the applicant should now be recommended for admission; and

"Whereas, this board recognizes that the Committee of Bar Examiners is vested with final authority to decide whether an application for recommendation should be granted or denied;

"Now be it Resolved, That this board, approving and supporting the action heretofore taken by the committee of Bar Examiners, recommends to said committee that it reconsider said application of T. F. McCue and that, on such reconsideration, and on the basis of the report made to this board by its special committee, said Committee of Bar Examiners recommend said McCue for admission to the practice of law in California."

Acting, no doubt, in response to this resolution, a subcommittee of the Committee of Bar Examiners was appointed and held a meeting for the purpose of determining whether the Committee of Bar Examiners would reconsider the application of T. F. McCue to practice law in this state. Mr. McCue was summoned before said meeting and interrogated. His examination, however, was limited to his course of conduct after taking up his residence in the state of California

some time in December, 1927, and particularly as to whether he had pursued the practice of law in this state without a license so to do. Upon the evidence taken before said subcommittee, the Committee of Bar Examiners refused to reopen Mr. McCue's case and again expressly denied his application.

Whereupon the applicant moved this court, on July 8, 1930, for an order admitting him to practice law in this state. Notice of said motion had been previously served on the Committee of Bar Examiners, and counsel representing said committee appeared at the hearing of said motion and resisted the granting of the same. At this hearing the matter was argued and submitted upon the oral arguments of counsel and briefs of the respective parties then on file.

While it does not appear that the original order of the Committee of Bar Examiners of date, February 24, 1928, denying Mr. McCue's application was based upon a finding of the committee that the applicant was not a person of good moral character, the only argument advanced by counsel to sustain said order is predicated upon the showing made before the committee as to McCue's moral character. We think it must be, and is, admitted by the committee that McCue, at the date of his application, possessed ''the necessary qualifications of learning and ability to practice before the courts of this state.'' The record before us shows that applicant was then fifty-eight years of age; that he was a graduate of the law department of the University of Northern Indiana; that he had been admitted to practice law before the Supreme Court of each of the states of Iowa, North Dakota and Montana; that he practiced law nineteen years in the state of North Dakota before going to Montana on account of his wife's health; that he was admitted to practice law before the Supreme Court of Montana in 1918 and practiced in that state continuously up to the year of 1926 excepting comparatively short intervals when he was out of the state on legal business; that he was attorney-general of the state of North Dakota for a term of two years; and that since coming to California he had been employed in a number of cases pending before the United States District Court of the Northern District of California. His application was accompanied by a certificate

from Chief Justice Callaway of the Supreme Court of Montana that applicant was a member of the bar of that state in good standing and that he had been engaged in the practice of law in the courts of that state for a period of three years within the period of seven years preceding the date of said certificate. The certificate bore date December 8, 1927.

We have recited the foregoing facts, not that there is any controversy regarding McCue's qualifications as to learning and ability, but that they might serve as a proper background to the discussion of the only seriously contested point in the case, and that is whether the applicant is possessed of the good moral character required by the laws of this state to entitle him to practice law.

That the proceeding in this court by motion to be admitted to practice law is a proper proceeding has been held by this court in *Brydonjack* v. *State Bar*, 208 Cal. 439 [66 A. L. R. 1507, 281 Pac. 1018], and in *Harrington* v. *State Bar*, 210 Cal. 514 [292 Pac. 456].

Accompanying applicant's petition to the Board of Governors of The State Bar there were filed numerous recommendations, letters, and certificates from prominent judges and attorneys and former clients of applicant residing principally in the state of Montana. These were not, however, confined to persons residing in said last-named state, but some of said letters were from persons occupying high official positions in our own state. These testimonials all stated that applicant was trustworthy, honorable, and a man of good moral character, or used words equally laudatory. There can be no question but that the showing made by applicant in respect to his good moral character was sufficient unless it was counteracted by adverse evidence as to his character. This adverse evidence consisted of charges which were made against applicant before the Supreme Court of the state of Montana and upon which it was sought to disbar him from practicing law in that state. It is not necessary for us to state these charges in any detail for the reason that they are fully set out in the opinions of the Supreme Court of the state of Montana when the same were considered by that court. We deem it sufficient to say at this time that when said charges were preferred against

applicant in the Supreme Court of Montana, the court appointed a former member of the District Court of that state to act as a referee and to take the testimony that might be offered bearing upon said charge and to report to the court his findings and conclusion in the matters before him. The referee held a hearing at which McCue was not present in person or by counsel. At the conclusion of said hearing the referee made findings sustaining said charges and reported the same to the Supreme Court. Thereupon that court reviewed the report of the referee, approved the same, and ordered that McCue be disbarred from the practice of law in that state. (*In re McCue,* 77 Mont. 47 [248 Pac. 187]:)

Thereafter McCue, who was absent from the state of Montana at the time of the hearing of said charges by the referee and during the time his disbarment proceedings were pending before the Supreme Court, returned to the state of Montana and asked that the judgment of disbarment against him be set aside on account of lack of notice to him of the pendency of such proceeding. The showing made by him in that respect was deemed sufficient by the court, and accordingly it made an order setting aside said judgment of disbarment, and permitted McCue to file an answer to the charges which were set forth in an amended complaint filed in said court. The matter was reset for hearing before the same referee on issue joined in each specification (four in number) contained in the amended complaint. Later the attorney-general was permitted to add thereto a fifth specification, which was duly denied by McCue. At the second hearing before the referee all of the evidence introduced on the first hearing was by stipulation considered as given on the second hearing, supplemented by further depositions and oral testimony on behalf of each of the parties to the proceeding, including the testimony of McCue. On July 11, 1927, the referee filed in the Supreme Court of Montana his report of said proceedings, including his findings of fact on each of the specifications on which testimony was introduced, his conclusion therefrom, and his recommendation that the proceedings be dismissed, "as on no one of the charges made had sufficient evidence been produced to warrant the disbarment of the accused". Upon

this report of the referee the Supreme Court of Montana held a hearing, and after the matter had been argued by counsel and exhaustively considered by the court, it adopted the report and approved the recommendation of the referee and dismissed the proceeding against the accused. (*In re McCue*, 80 Mont. 537 [261 Pac. 341].) It may be said, however, that the decision was by a divided court, three justices joining in the judgment of dismissal while two justices dissented therefrom. A transcript of the testimony taken before the referee at each of said hearings was filed with the Committee of Bar Examiners at its hearing held for the purpose of considering McCue's application, and the same has been certified to this court and is before us for all purposes.

▮ Applicant contends, however, that we are precluded from going behind the judgment of the Supreme Court of Montana in this matter and are prohibited from considering any evidence which might tend to sustain any of the charges considered by the court in said proceeding. In other words, the applicant contends that the question as to his good moral character in so far as the same was affected by the charges filed against him in the Supreme Court of the state of Montana has been judicially determined in his favor by the judgment of said court, and that the questions there raised and determined cannot be again considered by this court. In this we think the applicant is in error. The judgment of the Supreme Court of Montana in the disbarment proceeding against McCue binds all persons who were parties to said proceeding and their privies. But neither the people of this state nor any of its officers or agencies were parties to said proceeding, or had any interest therein, or any right to be heard therein. Upon well-established rules of law they would not therefore be bound by any adjudication that might be rendered by said court. (34 C. J., sec. 1405.)

▮ While we have the power to go behind said judgment and examine and consider the evidence offered in support of the charges which were then before the Montana court, we doubt whether if we did so we should arrive at any different result than that at which the Supreme Court of Montana arrived in said hearing. In the first place, there is no original evidence before us in support of the charges

determined by the Supreme Court of Montana. All there is before us, and all that the Committee of Bar Examiners had before it when passing upon McCue's moral character, was a transcript of the evidence taken before the referee appointed by the Supreme Court of Montana to take the testimony in the proceedings against McCue. The referee had the advantage of seeing the witnesses before him, of observing their manner while testifying, and of judging of their credibility. The referee was a former district judge of Montana, and it is in the record that he was not entirely satisfactory to McCue, who objected to his acting as referee. This objection was overruled, but this fact goes to show that the referee was not prejudiced in favor of McCue. Nevertheless, his findings were all in favor of McCue. The Supreme Court of Montana reviewed these findings and found that there was substantial evidence before the referee to sustain them. Under these circumstances we question the propriety of this court, or of any of its administrative agencies, assuming a contrary position or arriving at a different determination from that of the Supreme Court of Montana in its judgment dismissing said proceedings against McCue.

We are further influenced in this conclusion by the action of the Board of Governors of The State Bar. As we have already seen, upon McCue's application to reopen his case the board appointed a special committee from their own membership consisting of distinguished members of the bar of this state. This special committee reviewed the proceedings before the Committee of Bar Examiners and held a hearing, at which McCue was interrogated in regard to his connection with the matters involved in the charges against him in Montana, and upon this special committee's report to the Board of Bar Governors the latter body passed the resolution of February 21, 1930, hereinbefore set out in full, in which the board expressed as the opinion of its members that the evidence placed before them by its special committee made it proper and advisable that the applicant should be recommended for admission.

With this record before us we are not disposed to hold that applicant has not made a proper and sufficient showing as to his good moral character so far as the Montana charges are concerned.

The further claim is made, however, that the conduct of applicant since coming to this state, and particularly as to his activities in practicing law in this state, presents a sufficient reason and good cause for the denial of his application. These facts were brought out at the hearing before the subcommittee of the Committee of Bar Examiners, held on April 7, 1930, and after the Board of Bar Governors had passed the resolution of February 21, 1930, in which it expressed its opinion that the facts before it made "it proper and advisable that the applicant should be recommended for admission". After this hearing and on April 21, 1930, the Committee of Bar Examiners again denied the application of McCue. In the resolution passed by the committee in denying said application the committee set forth the following recital, or finding, which appears to be the basis upon which it made its order of denial:

"Whereas a further hearing was held on his application on April 7th, 1930, at which evidence was produced by both the applicant and by a representative of The State Bar, and whereas it appeared from said evidence that said applicant has been holding himself out to practice law in the state of California by the continued insertion of his name as an attorney-at-law in the telephone and city directories circulated in the city and county of San Francisco, and also by allowing his name to appear as a lawyer among the names of licensed attorneys-at-law on the entrance door of the offices occupied by him and them together, and by taking part in several trials in the superior court of the state of California, and in other respects, . . . "

McCue came to the state of California in December, 1927, with the intention of engaging in the practice of law. He immediately filed his application with the Board of Bar Governors, in which he called attention to the proceedings previously taken against him in the Montana Supreme Court. This application was denied by the Committee of Bar Examiners on February 24, 1928. On October 7, 1929, McCue made application before the Board of Governors to renew his application. It does not appear in the record before us when the Board of Governors took action upon this application, but after the board had appointed the special committee to examine into the facts and circumstances of said applica-

tion and said special committee had made its report, the Board of Governors on February 21, 1930, passed its resolution in which it gave as its opinion that McCue should be recommended for admission. Thereafter and on April 7, 1930, the subcommittee of the Committee of Bar Examiners held the hearing of which mention has already been made and at which hearing there was given evidence of McCue's activities in practicing law in this state without a license. It is contended by the Committee of Bar Examiners that the evidence produced at this hearing, showing that between the date of McCue's first application and the date of said hearing last mentioned McCue had practiced law in this state without a license, furnishes ample support of the order of the Committee of Bar Examiners denying his application.

The evidence in this respect may be grouped under three heads: (1) Evidence of his practicing law in the federal courts; (2) Evidence of his practicing law in the state courts; and (3) Evidence that during this time he held himself out as an attorney at law and entitled to practice law in this state.

Appellant admits that since coming to California under a license so to do he has frequently appeared in the federal courts of this district in the trial of cases. He stated to the committee that he had acted as attorney in some twenty different cases in said federal courts. In our opinion this was not a violation of any law of this state. The State Bar Act and other statutes enacted for the purpose of regulating the practice of law in this state are applicable to our state courts only. The federal courts are governed entirely by federal enactment and their own rules as to admission and professional conduct. This state, should it attempt, and we do not think it has, to regulate the practice of law in the federal courts or to place any restrictions or limitations upon the persons who might appear before the federal courts within this state, would be acting entirely without right and beyond its jurisdiction. It follows, therefore, that applicant's activities before the federal courts of this district were not subject to criticism, nor do they furnish any legal reason why he should be refused admission to practice in the courts of this state.

The evidence taken before the subcommittee of the Committee of Bar Examiners shows that McCue appeared, when first coming to this state, as a foreign attorney and with the consent of the court in a case pending at Woodland in Yolo County; that he made a like appearance in the Superior Court of the City and County of San Francisco before Judge Goodell and with Judge Goodell's consent; he was not the leading counsel in this case, but was asked by a Mr. Barfield, who was the attorney of record, to accompany him to the courtroom and appear in the case; that he filed the necessary papers in a case begun in the superior court of this state to have it transferred to the federal court of this district; that in a case on trial before Judge Cabaniss of the Superior Court of the City and County of San Francisco the judge, who was personally acquainted with the applicant, asked what he thought about the question of law then under consideration by the court, and applicant, who had done preliminary work in the case, arose in court and gave his answer to the question propounded by Judge Cabaniss, and that his reply might be called an argument; that in one instance, at the request of the attorney in the case and without compensation, he appeared at the taking of a deposition, but that said deposition had never been used in court. None of these acts of the applicant, nor all of them together, show any flagrant violation of the rules and regulations governing the conduct of attorneys in this state. █ It is common practice, and one sustained by general usage in all of the states of this Union, we believe, to permit upon request an attorney holding a license to practice law from one state to appear in the courts of a sister state, and there take part in the trial of an action pending in said courts. This is all the applicant did when he appeared in the trial of the action in Woodland, and before Judge Goodell. The same may be said with regard to applicant's participation in the trial in the court presided over by Judge Cabaniss. It appears that the part he took in this latter instance was at the request of Judge Cabaniss and consisted merely of answering a question propounded to him by the trial judge. █ We do not deem the action of applicant in having a case properly within the jurisdiction of the federal court, but begun in the superior court, transferred from the latter court to the proper jurisdiction to be a matter of any great

or serious consequence. The proceeding to have the case transferred from the state court was merely an incident to the defense and trial of the action in the federal court. If an attorney held a license to practice in the federal court, as well as a license from a foreign state, and could therefore represent his client in the trial of the case in the federal court, we think his appearance in the state court merely to have the action removed to the proper forum might well be considered within the rights and privileges accorded him by his said licenses. ■ His appearance before the officer before whom a deposition was being taken at the request of the attorney of record is a practice not to be commended. This proceeding, even though held without the court, was in fact a proceeding in court. Applicant was not within his rights in appearing at said hearing, and the fact that he was acting without compensation does not furnish any justification for his actions. He had no consent from the court to appear at said hearing, and he was clearly violating the ethics of his profession as well as the laws of his adopted state by acting as an attorney in said matter without a license. However, we do not consider this conduct on his part as in any way involving his moral character, or that it is sufficient in itself to deprive him of his right to a license to practice law in this state.

■ Finally, we will consider the acts and conduct of applicant which, it is contended by the Committee of Bar Examiners, show and prove that McCue since coming to this state had held himself out as an attorney at law and entitled to practice law in this state. We have carefully examined the evidence bearing upon the conduct of applicant in the respect just mentioned and we are of the opinion that it cannot be given the severe construction contended for by the committee. It is true that he maintained an office in the city of San Francisco at which he carried on his practice which grew out of those actions in which he was retained and which were pending in the federal courts. He had printed cards and other stationery, but on all of these it was distinctly stated that his practice was confined exclusively to cases before the federal courts. He testified that he invariably refused to be consulted in regard to cases before the state courts and declined employment in all such

cases. His name was on the door leading to his office, together with other persons occupying the same suite of offices with him. This door was described by a witness as follows: "Well, the number appears, then 'Law Offices,' then the name of Clarence G. Atwood, with two bars under the name 'Atwood,' then Thomas F. McCue, Clifton Hildebrand, then W. W. Chapin." It appears that Mr. Atwood and Mr. Hildebrand were attorneys, but that Mr. Chapin was not. It must be conceded that the meaning of the lettering on the office door is somewhat uncertain, and to a certain extent the lettering is deceptive. Whether it was intended that the names of the persons under the two bars were to be understood as the names of persons who were attorneys may not be entirely clear, but certainly it would be so understood by the general public.

The name Thomas F. McCue appears in the telephone directory and in the city directory, followed by the words "attorney-at-law", as well as his address. He states that he did not authorize the insertion of his name in either publications, and that if it was there it was the work of one of his associates. While it would appear that applicant has not been as punctilious as he should have been in observing the niceties of professional ethics, and while it would have been much more in keeping with good taste for him to have refrained from the commission of some of the acts enumerated above until he had been regularly licensed to practice law in this state, we cannot bring ourselves to hold that his conduct has been such as to merit a denial of his right to practice law in the state in which he is now making his home. We cannot approve of his actions in every particular, but it is our judgment that they are not of such a serious nature as to be a bar to his right to practice his profession, for which in many respects he has shown himself to be so well qualified.

It is therefore ordered that applicant, Thomas F. McCue, be and he is hereby admitted to practice as an attorney and counselor at law, authorized to practice in all the courts of this state, and the clerk of this court is hereby directed to issue and deliver to him a certificate of such authority upon his taking the prescribed oath and signing the roll of attorneys.

Rehearing denied.

Shenk, J., and Preston, J., dissented.